**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| TEAM WORLDWIDE CORPORATION,<br><br>         Plaintiff,<br><br>    v.<br><br>WAL-MART STORES, INC., WAL-MART STORES TEXAS, LLC, WAL-MART.COM USA LLC, and SAM'S WEST, INC. d/b/a SAM'S CLUB,<br><br>         Defendants. | Case No. 2:17-cv-00235-JRG |

**<u>INTEX RECREATION CORP.'S AND INTEX TRADING LTD.'S MOTION TO
INTERVENE</u>**

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ...........................................................................................................1

II. FACTUAL BACKGROUND .........................................................................................2

    a. The Nature and Stage of Proceedings. ................................................................2

    b. The Products Accused of Infringing Are Produced by Separate, Competing Companies. ..........................................................................................................4

    c. TWW Asserts Infringement of Accused Products That Are Designed, Marketed, Sold, and Distributed by IRC and ITL. ..............................................4

    d. Walmart Demanded Indemnity from Intex. .......................................................6

    e. Intex Sells Accused Products to Numerous Domestic Indemnified Customers. ..........................................................................................................6

    f. Plaintiff's Position. .............................................................................................6

ARGUMENT ..............................................................................................................................7

I. Intex Is Entitled to Intervene as of Right Pursuant to Rule 24(a)(2). ............................7

    a. Intex's Motion to Intervene Is Timely. ...............................................................7

    b. Intex Has a Significant Interest in This Lawsuit. ...............................................9

    c. Intex's Ability to Protect its Interests Will Be Impaired if it Cannot Intervene. ..........................................................................................................11

    d. Walmart Cannot Adequately Represent Intex's Interest. .................................12

II. In the Alternative, Intex Should Be Permitted to Intervene Permissively. ...................14

III. TWW Cannot Preclude Intex from Moving to Transfer Venue as a Condition of Intervention. ..................................................................................................................14

Conclusion ................................................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*City of Houston v. Am. Traffic Sols., Inc.*,
  668 F.3d 291 (5th Cir. 2012) ...................................................................................................7

*Donovan v. Oil, Chem., & Atomic Workers Int'l Union & Its Local 4-23*,
  718 F.2d 1341 (5th Cir. 1983) ...............................................................................................14

*Edwards v. City of Houston*,
  78 F.3d 983 (5th Cir. 1996) .....................................................................................................8

*Fisherman's Harvest, Inc. v. United States*,
  74 Fed. Cl. 681 (2006) ...........................................................................................................11

*Fujitsu Ltd. v. Nanya Tech. Corp.*,
  2008 WL 3539503 (N.D. Cal. Aug. 12, 2008) ......................................................................11

*Heaton v. Monogram Credit Card Bank of Ga.*,
  297 F.3d 416 (5th Cir. 2002) ...........................................................................................12, 13

*IBM Corp. v. Conner Peripherals, Inc.*,
  1994 WL 706208 (N.D. Cal. Dec. 13, 1994) .........................................................................11

*In re Nintendo of Am., Inc.*,
  756 F.3d 1363 (Fed. Cir. 2014) ................................................................................................9

*Indus. Tech. Research Inst. v. LG Elecs., Inc.*,
  2014 WL 5325709 (S.D. Cal. Oct. 17, 2014) ........................................................................10

*Intellectual Ventures I LLC v. AT&T Mobility LLC*,
  2014 WL 4445953 (D. Del. Sept. 8, 2014) .........................................................................9, 12

*Intex Recreation Corp. v. Team Worldwide Corp.*,
  1-04-cv-01785 (D.D.C. filed Oct. 15, 2004) .......................................................................2, 6

*Microchip Tech. Inc. v. Chamberlain Group, Inc.*,
  441 F.3d 936 (Fed. Cir. 2006) ................................................................................................11

*Pam Intl., Inc. v. Kam Coach, LLC*,
  2008 WL 2037302 (E.D. Tex. May 9, 2008) .........................................................................10

*Reid v. General Motors Corp.*,
  240 F.R.D. 257 (E.D. Tex. 2006) ...........................................................................................14

*Sec. and Exch. Com'n v. U.S. Realty & Imp. Co.*,
  310 U.S. 434 (1940)..................................................................................................14

*Secure Axcess, LLC v. Nintendo of Am. Inc.*,
  2014 WL 986169 (E.D. Tex. Mar. 7, 2014) ..............................................................9

*Select Retrieval, LLC v. ABT Elecs.*,
  2013 WL 6576861 (N.D. Ill. Dec. 13, 2013)...........................................................10

*Sierra Club v. Espy*,
  18 F.3d 1202 (5th Cir. 1994) .................................................................................7, 8

*Stauffer v. Brooks Brothers, Inc.*,
  619 F.3d 1321 (Fed. Cir. 2010)..................................................................................7

*Texas v. United States*,
  805 F.3d 653 (5th Cir. 2015) ..........................................................................7, 9, 12

*TiVo Inc. v. AT&T, Inc.*,
  2010 WL 10922068 (E.D. Tex. Mar. 31, 2010) ....................................................8, 14

*U.S. Ethernet Innovations, LLC v. Acer, Inc.*,
  2010 WL 11488729 (E.D. Tex. May 10, 2010)....................................10, 11, 12, 14

*WS Packaging Group, Inc. v. Global Commerce Group, LLC*,
  505 F. Supp. 2d 561 (E.D. Wis. 2007)....................................................................10

**FEDERAL STATUTES**

35 U.S.C. § 299............................................................................................................1

**RULES**

Fed. R. Civ. P. 24.....................................................................................................1, 7

Fed. R. Civ. P. 24(a) ..........................................................................................7, 13, 15

Fed. R. Civ. P. 24(a)(2) .........................................................................1, 2, 7, 9, 12, 15

Fed. R. Civ. P. 24(b) ..................................................................................................14

Fed. R. Civ. P. 24(b)(1)(B) ............................................................................1, 2, 14, 15

Fed. R. Civ. P. 24(c) ....................................................................................................3

I.  **INTRODUCTION**

Pursuant to Federal Rule of Civil Procedure 24, Intex Recreation Corp. ("IRC") and Intex Trading Ltd. ("ITL") (collectively, "Intex") move for leave to intervene in the above-entitled action as of right pursuant to Rule 24(a)(2), or alternatively, with permission of the Court pursuant to Rule 24(b)(1)(B).  As the marketers, sellers, distributors, indemnitors, and sole suppliers of the accused Intex® brand products (the "Accused Products"), Intex is a "true defendant" to this action, with a clear interest in this litigation and the right to be a party defendant.  The relief requested by Intex flows from that recognition.  Intex attaches (with concurrence from the original defendants and the other proposed intervenor), motions to sever unrelated product claims for misjoinder and to further sever the claims against Intex, transfer them, and stay the remaining claims, which Intex intends to file should the Court grant leave to intervene.  (*See* Exs. 2, 3.)  In short, had this case been properly postured by Plaintiff, it would actually involve multiple lawsuits against unrelated products in separate districts—a result required by 35 U.S.C. § 299, the Supreme Court's decision in *TC Heartland*, and other binding precedent.

Plaintiff Team Worldwide Corporation ("TWW") brought suit against Wal-Mart Stores, Inc., Wal-Mart Stores Texas, LLC, Wal-Mart.com USA LLC, and Sam's West, Inc. d/b/a Sam's Club (collectively, "Walmart"), asserting infringement of three patents assigned to TWW:  U.S. Patent No. 7,246,394 (the "'394 Patent"); U.S. Patent No. 7,346,950 (the "'950 Patent"); and U.S. Patent No. 9,211,018 (the "'018 Patent") (collectively, the "Asserted Patents").  (Dkt. 1 ¶ 18.)  TWW claims that the Asserted Patents are infringed "by air beds that feature an internally housed pump" (*id.* ¶ 19) that Walmart "imported, imports, sells, offers for sale, has sold and/or has offered for sale" within the United States (*id.* ¶ 20).  The Complaint jointly accuses

1

competing Intex®, Coleman®, and Aero® brand products of infringement, despite the fact that Intex's products were developed completely independently.[1]

IRC and ITL are "true defendants" in this case with a direct and substantial interest in this litigation. IRC is the domestic, importer, marketer, seller, and distributor of the Accused Products. ITL is a foreign trading company that sells Intex products to United States customers. IRC and ITL supplied Walmart (and other United States customers) with all Accused Products for which TWW seeks an injunction and money damages. Walmart has tendered a demand that ITL and IRC indemnify and defend it for those products (and only those products) they sold to Walmart pursuant to the terms of the parties' supply agreements, which indemnification ITL and IRC agreed to provide. As the suppliers of the Accused Products, ITL and IRC have a substantial interest in defending the Accused Products against allegations of infringement. Indeed, ITL's and IRC's sales to and relationship with Walmart, as well as with other domestic retailer customers who are not parties to this suit, could be greatly impacted by the outcome of this litigation and any potential injunction that could result. Moreover, ITL's and IRC's indemnification of Walmart gives ITL and IRC a substantial financial stake in the defense of this case. ITL and IRC are the true defendants in this matter as to the Accused Products, and Intex is entitled to intervene as a matter of right pursuant to Rule 24(a)(2).[2]

## II. FACTUAL BACKGROUND

### a. The Nature and Stage of Proceedings.

Plaintiff filed suit against Walmart on March 29, 2017, and the case is still in its early

---

[1] TWW has knowledge of Intex's products (and the process for developing those products), due to a decade-long infringement case involving the exact same accused products that are at issue here. *See Intex Recreation Corp. v. Team Worldwide Corp.*, 1-04-cv-01785 (D.D.C. filed Oct. 15, 2004).

[2] Alternatively, Intex requests that the Court allow it to intervene permissively pursuant to Rule 24(b)(1)(B).

2

stages. The Walmart defendants are all related companies that sell products at retail stores throughout the United States (Plaintiff also refers to them collectively as "Walmart"). Walmart answered on June 5, 2017, and the Court held a scheduling conference on July 25. No discovery requests have been exchanged. Trial and claim construction proceedings are still far away. Although Intex ultimately seeks to transfer the case to its proper venue in California, Intex's proposed counterclaims and defenses mirror the very same issues raised in Walmart's answer,[3] minimizing delay or prejudice that could result from adding Intex's counterclaims and defenses.

Intex seeks to intervene as the "true defendant" with respect to the Accused Products, and, in the course of defending against TWW's allegations, intends to file two procedural motions, a motion to sever the true defendants for misjoinder (*see* Ex. 2 attached hereto) and a motion to further sever the claims against Intex, transfer them, and stay the remaining claims against Walmart (*see* Ex. 3 attached hereto), resulting in the following scenario:



---

[3] Intex attaches to this Motion its Answer in Intervention, (Ex. 1) as required by Rule 24(c).

These motions, which were coordinated with Coleman Company, Inc. ("Coleman") and Walmart, seek to sever the parties and transfer the case to the proper venues for trial against the true defendants.[4]  Intex intends to file the motions upon the Court's order granting intervention.

### b. The Products Accused of Infringing Are Produced by Separate, Competing Companies.

The Complaint jointly accuses three different brands of allegedly infringing air mattresses (Coleman®, Aero®, and Intex®) that incorporate four different internally housed air pumps. (Dkt. 1 ¶ 19.)  The differently branded air mattresses, all allegedly sold by Walmart, are independently designed, developed, manufactured, and sold. (Declaration of Matthew Whalen In Support of Intex Recreation Corp.'s and Intex Trading Ltd.'s Motion to Intervene ("Whalen Dec."), ¶ 15.)  Intex supplied the Intex® brand products to Walmart, while Coleman—a separate and competing company—supplied the Coleman® and Aero® brand products. (*Id.*)

### c. TWW Asserts Infringement of Accused Products That Are Designed, Marketed, Sold, and Distributed by IRC and ITL.

The Accused Products are manufactured by Intex Industries, a foreign company in the Intex family of companies (the "Intex Family"). (Whalen Dec., ¶ 13)  The Intex Family consists of multiple independent companies and corporations (including IRC and ITL) that coordinate functions throughout the world and work cooperatively in the sale and distribution of Intex® brand products, including the Accused Products at issue here. (*Id.*)  IRC is incorporated in California and maintains its principal place of business in Long Beach, California. (*Id.*, ¶ 9)  IRC owns and operates several facilities in Long Beach, including a warehouse and distribution

---

[4] The Aero® and Coleman® brand products are addressed in separate motions to intervene by Coleman.  Walmart has represented to the undersigned counsel that it concurs with Intex's motions to sever and stay, and, if the Court deems it necessary, Walmart will separately move for the relief requested in those motions.

center, and business offices for its employees and executive officers. (*Id*.) IRC is the American face of the Intex Family and controls all domestic strategy related to Intex products out of its Long Beach headquarters. (*Id*. ¶¶ 10-11.) IRC is primarily responsible for the import, marketing, sales, and domestic distribution of all Intex® brand products, including the Accused Products. (*Id*. ¶ 10.) All decisions related to the Accused Products in the United States are made by IRC's employees in Long Beach, who also provide design input on Intex's products. (*Id*. ¶ 11.) IRC currently employs 84 employees, including a sales force of 16 people, all of whom are based in Long Beach. (*Id*.) From the Long Beach headquarters, IRC employees develop customer relationships, execute sales contracts and supply agreements with domestic retailers, and sell Intex® brand inventory to domestic retailers and wholesalers. (*Id*. ¶¶ 10, 11, 14.) IRC also maintains technical, design, and development documents at its Long Beach headquarters related to the Accused Products for the purpose of training sales staff, conducting quality control, and providing design input for Intex products. (*Id*. ¶¶ 19-20.)

ITL is a trading entity organized as a limited company in the British Virgin Islands with its principal place of business in Hong Kong. (*Id*. ¶ 12.) ITL enters into sales contracts directly with Walmart and other domestic retailers that import Intex products directly from ITL, with the execution of such contracts occurring at IRC's headquarters in Long Beach, California. (*Id*. ¶¶ 10, 14, 22.) IRC also buys and imports Intex products directly from ITL. (*Id*. ¶ 14.) For all Intex products sold in the United States, IRC is the party that provides customer support and ongoing service obligations related to those products. (*Id*. ¶ 10.)

Here, both IRC and ITL sold the Accused Products to Walmart. ITL and IRC have each entered supplier agreements and sales contracts with Walmart for the Accused Products. (*Id*.

5

¶¶ 16-17.) IRC serves as Walmart's point of contact for customer support, technical questions, and other matters (like this lawsuit) that may arise concerning all Accused Products. (*Id*. ¶ 10.)

### d. Walmart Demanded Indemnity from Intex.

IRC and ITL each entered into an indemnification agreement with Walmart, whereby IRC and ITL independently agreed to indemnify Walmart against claims such as patent infringement related to the Accused Products. (Whalen Dec., ¶¶ 16-17.) After TWW filed this lawsuit, Walmart requested indemnification from IRC and ITL for the claims asserted by TWW against the Accused Products. IRC accepted its indemnification obligation on May 12, 2017; ITL accepted its indemnification obligation on May 15, 2017. (*Id.*)

### e. Intex Sells Accused Products to Numerous Domestic Indemnified Customers.

Intex is the sole source of the Accused Products in the United States and sells the Accused Products to numerous retailers around the United States, in addition to Walmart. (*Id*. ¶¶ 14, 19.) As with Walmart, Intex has agreed to indemnify its other customers against lawsuits related to the Accused Products, including claims of patent infringement. (*Id*. ¶ 19.) Intex expects its other customers would similarly request that Intex tender indemnification if Plaintiff accused them of patent infringement.

### f. Plaintiff's Position.

Plaintiff TWW is a Taiwanese Corporation with a principal place of business in Taipei City, Republic of China ("Taiwan"). (Dkt. 1 ¶ 1.) TWW and IRC were previously involved in a patent infringement case, *Intex Recreation Corp. v. Team Worldwide Corp.*, 1-04-cv-01785 (D.D.C. filed Oct. 15, 2004) ("*TWW I*"), in which TWW asserted patent infringement claims against Intex based on a patent related to the '018 and based on Intex's sale of the same products

accused of infringement in this case. (Declaration of Andrew McCoy ("McCoy Decl."), ¶ 3, Ex. 4.) TWW opposes each of Intex's motions.

## ARGUMENT

### I.    Intex Is Entitled to Intervene as of Right Pursuant to Rule 24(a)(2).

Federal Rule of Civil Procedure 24(a) governs intervention as of right. *Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015). Because the issue of intervention is not unique to patent law, regional circuit law controls. *See Stauffer v. Brooks Brothers, Inc.*, 619 F.3d 1321, 1328 (Fed. Cir. 2010) (denial of intervention reviewed under regional circuit's law). Rule 24 is to be "liberally construed," and under Fifth Circuit law, courts "should allow intervention where no one would be hurt and the greater justice could be attained." *Texas*, 805 F.3d at 657 (quoting *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994)).

Under Rule 24(a)(2), a movant must be permitted to intervene when the four requirements of Fed. R. Civ. P. 24(a)(2) are met:

> (1) the application for intervention must be timely; (2) the applicant must have an interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest; (4) the applicant's interest must be inadequately represented by the existing parties to the suit.

*Texas*, 805 F.3d at 657 (internal quotation omitted). Intervention as of right "must be measured by a practical rather than technical yardstick." *City of Houston v. Am. Traffic Sols., Inc.*, 668 F.3d 291, 293 (5th Cir. 2012) (quotation omitted). Here, Intex meets all four requirements.

###     a.    Intex's Motion to Intervene Is Timely.

Timeliness is determined from all of the circumstances in a case, including the time lapse between notice of the intervenor's interest in the case to the filing of the motion to intervene, the extent of prejudice to existing parties as a result of timing of the motion, the extent of the

7

prejudice to the moving party if leave to intervene is denied, and the existence of unusual circumstances militating either for or against a determination that the motion is timely. *Edwards v. City of Houston*, 78 F.3d 983, 1000 (5th Cir. 1996) (citation omitted). The timeliness analysis is contextual, not absolute, and "[t]he requirement of timeliness is not a tool of retribution to punish the tardy would-be intervenor, but rather a guard against prejudicing the original parties by the failure to apply sooner." *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994).

Here, Intex has moved to intervene in the very early stages of this case, and TWW has no reasonable basis to claim prejudice from the timing of this motion to intervene. TWW filed its Complaint against Walmart less than five months ago, on March 29, 2017. (Dkt. 1.) Walmart tendered demands for indemnification to ITL and IRC less than four months ago, on April 26, 2017. (Whalen Dec., ¶¶ 16-17.) Walmart answered Plaintiff's Complaint on June 5, 2017. (Dkt. 16.) The scheduling conference was held on July 25, 2017, and claim construction and trial were set at that conference for January 26 and August 20, 2018, respectively. Accordingly, at this early stage of the proceedings, Intex's motion to intervene is timely. *See, e.g., TiVo Inc. v. AT&T, Inc.*, 2010 WL 10922068, at *4 (E.D. Tex. Mar. 31, 2010) (no delay where nearly five months elapsed between filing of complaint and motion to intervene); *see also Edwards*, 78 F.3d at 1001 (noting that "most of our case law rejecting petitions for intervention as untimely concern motions filed after judgment was entered in the litigation"). Moreover, there is no prejudice to Walmart by the timing of Intex's motion to intervene, and indeed Walmart supports the motion. Given that trial is in 2018, there is also no basis for TWW to claim any prejudice from the timing of this motion.

### b. Intex Has a Significant Interest in This Lawsuit.

The Fifth Circuit has interpreted Rule 24(a)(2) to require a "direct, substantial, legally protectable interest in the proceedings." *Texas*, 805 F.3d at 657 (quotations omitted). This "inquiry turns on whether the intervenor has a stake in the matter that goes beyond a generalized preference that the case come out a certain way." *Id*.

Here, Intex has a direct, substantial, and legally protectable interest in this litigation because Intex is the "true defendant" to Plaintiff's claims against the Accused Products. *Secure Axcess, LLC v. Nintendo of Am. Inc.*, 2014 WL 986169, at *5 (E.D. Tex. Mar. 7, 2014) (finding party responsible for the marketing, sale, and distribution of accused products to retailers to be "true defendant"), vacated sub nom. *In re Nintendo of Am., Inc.*, 756 F.3d 1363, 1365 (Fed. Cir. 2014) ("[W]e agree with the district court that . . . Nintendo is the true defendant."). IRC and ITL import, market, sell, and distribute to Walmart the very products at issue in this litigation. (Whalen Dec., ¶¶ 13-14.) IRC provides design input on the Accused Products. (*Id*. ¶ 11) IRC and ITL are the only entities that market, sell, and distribute the Accused Products to retailers and wholesalers in the United States (*Id*. ¶ 14). ITL's and IRC's direct interest in the ongoing import, sale, and distribution of these products is put at risk by Plaintiff's allegations of infringement. *See, e.g., Intellectual Ventures I LLC v. AT&T Mobility LLC*, 2014 WL 4445953, at *2 (D. Del. Sept. 8, 2014) ("[In a patent infringement action,] intervention is necessary to enable Intervenors to protect their interest in products which Intervenors manufacture for Defendants, an interest put at risk by the litigation as Plaintiffs accuse these products of infringement.").

Moreover, Intex's greater interest stems from the fact that it sells the Accused Products to other customers in the United States, and thus has a greater interest in directly defending the

potential claims against those products. Such an interest arises from the possibility that future lawsuits against its other customers could lead to inconsistent judgments. *See Select Retrieval, LLC v. ABT Elecs.*, 2013 WL 6576861, at *2–3 (N.D. Ill. Dec. 13, 2013) (finding intervention of right supported by fact that intervenor's "other customers" were not accused of infringement, and "[intervenor] (through its customers) would be subject to potentially inconsistent judgments regarding whether its technology infringes the patent," and intervenor's "ability to defend its technology could be compromised"). Additionally, Intex's interest arises from the potential harm to its other customer relationships should Walmart be found to infringe. *See U.S. Ethernet Innovations, LLC v. Acer, Inc.*, 2010 WL 11488729, at *2 (E.D. Tex. May 10, 2010) ("Courts have held that beyond the injury that might arise from having to indemnify customers, a manufacturer such as [the Intervenor] faces the loss of its customer base and reputation as a result of patent infringement allegations.") (citing *WS Packaging Group, Inc. v. Global Commerce Group, LLC*, 505 F. Supp. 2d 561, 566 (E.D. Wis. 2007)); *see also Indus. Tech. Research Inst. v. LG Elecs., Inc.*, 2014 WL 5325709, at *4 (S.D. Cal. Oct. 17, 2014) (finding (while undisputed) a protectable interest where "[intervenor] may be unable to sell [the accused product] to U.S. customers if Plaintiff were to succeed in this litigation," which may "adversely impair [intervenor's] significantly protectable interest").

Accordingly, ITL and IRC are entitled to vigorously defend such issues as claim construction of the Asserted Patents, validity of the Asserted Patents, and infringement that could impact Intex® brand products well beyond the confines of this litigation.

Finally, as the parties obligated to indemnify Walmart for the Accused Products, (Whalen Dec., ¶¶ 16-17), ITL and IRC also have a significant interest in defending against any potential damages in this suit. *See, e.g., Pam Intl., Inc. v. Kam Coach, LLC*, 2008 WL 2037302, at *2

(E.D. Tex. May 9, 2008) (granting permissive intervention where indemnification provision with named defendant "potentially plac[ed Intervenor's] interests directly at issue as a result of Plaintiff's allegations"); *U.S. Ethernet*, 2010 WL 11488729, at *2 (finding intervention warranted because indemnification "establishes a legal relationship that traditionally warrants declaratory jurisdiction in a dispute between the manufacturer and a patentee who has threatened or brought suit against the manufacturer's customers") (citing *Fujitsu Ltd. v. Nanya Tech. Corp.*, 2008 WL 3539503, at *2–3 (N.D. Cal. Aug. 12, 2008); *Microchip Tech. Inc. v. Chamberlain Group, Inc.*, 441 F.3d 936, 941–44 (Fed. Cir. 2006)); *see also Fisherman's Harvest, Inc. v. United States*, 74 Fed. Cl. 681, 685 (2006) ("An indemnitor may be allowed to intervene in a lawsuit brought against an indemnitee in order to protect its interest under an indemnity agreement.") (internal citations omitted); *IBM Corp. v. Conner Peripherals, Inc.*, 1994 WL 706208, at *5 (N.D. Cal. Dec. 13, 1994) (holding claims against indemnitee are in effect claims against indemnitor).

As the entities ultimately responsible in the event of an adverse money judgment, ITL and IRC have a very strong interest in vigorously defending these claims. Accordingly, Intex's substantial interests in this lawsuit warrant intervention as of right.

### c. Intex's Ability to Protect its Interests Will Be Impaired if it Cannot Intervene.

Intex's ability to protect and defend its Accused Products will be compromised if it does not intervene as a defendant in this action. TWW's allegations focus on the Accused Products, and ITL and IRC are best suited to ensure that the facts regarding these products are fully developed and presented in this case. TWW seeks money damages and an injunction related to the Accused Products. Because of its indemnification obligation to Walmart, ITL and IRC will

11

be responsible for any potential money judgment.  And if granted, an injunction would adversely impact Intex's ability to distribute the Accused Products.

Moreover, an adverse ruling could potentially impact Intex's reputation and sales with its customer base, *see*, *e.g.*, *U.S. Ethernet*, 2010 WL 11488729, at *2, affecting Intex's relationships with other retailer customers not named as defendants here.  Walmart cannot be expected to defend Intex's greater interest in protecting its customer base of competing, non-party retailers.

Finally, an adverse judgment could also create precedent that could be used against Intex and its customers in other proceedings related to the Accused Products.  "The stare decisis effect of an adverse judgment constitutes a sufficient impairment to compel intervention."  *Heaton v. Monogram Credit Card Bank of Ga.*, 297 F.3d 416, 424 (5th Cir. 2002).  For instance, this Court's findings could potentially and adversely impact future issues of preclusion, infringement, defenses, and invalidity determinations that bear directly on Intex's products.   Thus, Intex is best suited to protect its interests by intervening in this lawsuit.

### d.  Walmart Cannot Adequately Represent Intex's Interest.

In the Fifth Circuit, in order to satisfy the "inadequate representation" requirement of Rule 24(a)(2), Intex must demonstrate that its interests "may be" inadequately represented by the existing parties.  *Texas*, 805 F.3d at 661.  Although Intex bears the burden to establish inadequate representation, that burden is "minimal," just not so minimal "as to write the requirement completely out of the rule."  *Id*. (citation omitted).

Here, Walmart cannot adequately represent Intex's interests absent Intex's intervention because Walmart is not as "well-situated to understand and defend [Intex's] products." *Intellectual Ventures,* 2014 WL 4445953, at *2.  Walmart has thousands of retail stores in the United States, selling millions of different products in stores and online.  (McCoy Dec., ¶ 4; Ex.

12

5, *e.g.*, pg. 8-9.) Walmart cannot shoulder the burden of becoming a technical expert, and the chief defender, for every product it resells. In contrast, Intex possesses direct and superior technical knowledge of the Accused Products' design and function and is best suited to ensure that Intex's interests are adequately represented. (*See* Whalen Dec., ¶ 18.) Intex employs individuals with intimate knowledge of technical details of the Accused Products, the industry standards the Accused Products must meet, and the design and manufacturing processes that produced the Accused Products. (Whalen Dec., ¶¶ 10-11, 13.) Intex also possesses documents related to the design, development, and manufacture of the Accused Products. (*Id.* ¶ 21.) Intex is simply better suited to defend the Accused Intex Products in this lawsuit.

Moreover, although Walmart will defend against TWW's allegations, Intex's interest in protecting its products from a finding of infringement far exceeds Walmart's interest. For example, Walmart's defense to this lawsuit as filed will be divided among the three named products that are accused of infringement (and potentially many more), two of which are produced by Intex's direct competitor in this market, Coleman. In such a scenario, it is quite possible that Intex's interests on the merits of the claims may diverge from those of Coleman. Moreover, Intex sells the Accused Products to other retail and online customers who are not named in this lawsuit—at least some of whom are direct competitors of Walmart. (*Id.* ¶¶ 14, 19.) Walmart's defense of the infringement claims may be inadequate to protect Intex's interests with regard to these competing retailers. *See Heaton*, 297 F.3d at 425 ("That the FDIC's interests and Monogram's may diverge in the future, even though, at this moment, they appear to share common ground, is enough to meet the FDIC's burden on this issue.").

Given that Intex has established all four requirements of Fed. R. Civ. P. 24(a), Intex is entitled to intervene as a matter of right and file the attached Motions in this lawsuit.

## II. In the Alternative, Intex Should Be Permitted to Intervene Permissively.

Intex alternatively requests the Court's permission to intervene under Federal Rule of Civil Procedure 24(b), which permits intervention for a party who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B); *TiVo Inc.*, 2010 WL 10922068, at *4. Permissive intervention "plainly dispenses with any requirement that the intervenor shall have a direct personal or pecuniary interest in the subject of the litigation." *Sec. and Exch. Com'n v. U.S. Realty & Imp. Co.*, 310 U.S. 434, 460 (1940).

Permissive intervention is appropriate here. Plaintiff's infringement allegations are directed specifically at Intex® brand products supplied to Walmart by Intex. Consequently, the Court hearing this case could potentially determine common issues of preclusion, non-infringement, invalidity, and other determinations that bear directly on Intex's products, as well as Walmart's defense of this litigation. *See, e.g.*, *U.S. Ethernet,* 2010 WL 11488729, at *2 (granting permissive intervention where intervenor shared common questions of law and fact and similar defenses as named defendant); *Reid v. General Motors Corp.*, 240 F.R.D. 257, 260 (E.D. Tex. 2006) (granting intervention where intervenor and named defendant shared issues of non-infringement, invalidity, and unenforceability). Finally, as noted above, at this early stage, there is no undue delay or prejudice to either TWW or Walmart if Intex is allowed to intervene.

## III. TWW Cannot Preclude Intex from Moving to Transfer Venue as a Condition of Intervention.

TWW may argue that Intex cannot intervene for the purpose of seeking to transfer venue. However, this District has already rejected that argument, stating that there was no support for "the proposition that a party's right to request a transfer of venue should be waived as a cost of intervention." *See TiVo*, 2010 WL 10922068, at *4; *see also Donovan v. Oil, Chem., & Atomic Workers Int'l Union & Its Local 4-23*, 718 F.2d 1341, 1350 (5th Cir. 1983) ("An intervenor of

14

right under Rule 24(a) is treated as if he were an original party and has equal standing with the original parties." (quotation omitted)).  Here, the manner in which this case was filed has *required Intex to intervene* for the purpose of severing and transferring venue.  ITL and IRC are the proper parties to defend the infringement allegations against the Accused Products in this lawsuit—not Walmart.  TWW's failure to bring this suit against the proper party (and in the proper venue) should not be allowed to hinder Intex's ability to defend itself.

## Conclusion

For the foregoing reasons, Intex is entitled to intervene as a matter of right pursuant to Fed. R. Civ. P. 24(a)(2), or permissively pursuant to Fed. R. Civ. P. 24(b)(1)(B).

Dated: August 2, 2017

Respectfully submitted,

By: /s/ *Andrew M. McCoy*
R. Trevor Carter (admitted to E.D. Tex)
  IN Bar No. 18562-49
Andrew M. McCoy (admitted to E.D. Tex.)
  IN Bar No. 28297-49
**FAEGRE BAKER DANIELS LLP**
300 North Meridian Street, Suite 2700
Indianapolis, Indiana 46204
Telephone:  (317) 237-0300
Facsimile:  (317) 237-1000
Trevor.Carter@FaegreBD.com
Andrew.McCoy@FaegreBD.com

*Counsel for Intervenor Defendants, Intex Recreation Corp. and Intex Trading Ltd.*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was filed electronically in compliance with Local Rule CV-5(a). Therefore, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to Fed. R. Civ. P. 5(d) and Local Rule CV-5(d) and (e), all other counsel of record who have not consented to electronic service were served with a true and correct copy of the foregoing by mail on August 2, 2017.

/s/ *Andrew M. McCoy*

**CERTIFICATE OF CONFERENCE**

I hereby certify that the parties have complied with the meet and confer requirement in Local Rule CV-7(h). On August 1, 2017, counsel for Intervenors Intex Recreation Corp. and Intex Trading Ltd. (collectively, "Intex"), Chad Everingham, and counsel for Plaintiff Team World Wide Corporation ("TWW"), S. Calvin Capshaw, conferred by phone regarding this Motion to Sever, Transfer, and Stay. Counsel for Intex explained the basis for the motion during the conference. Counsel for TWW is opposed to the relief requested herein. The parties were unable to reach an agreement and are at an impasse, leaving open issues for the Court to resolve. Mr. Everingham (who will also be entering an appearance for Intex) conveyed his conference with Mr. Capshaw to the undersigned counsel on August 1, 2017.

/s/ *R. Trevor Carter*