IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| TEAM WORLDWIDE CORPORATION, | § § § | |
| *Plaintiff,* | § § § | CIVIL ACTION NO. 2:17-CV-00235-JRG |
| v. | § § § § | |
| WAL-MART STORES, INC., WAL-MART STORES TEXAS, LLC, WAL-MART.COM USA LLC, SAM'S WEST, INC. D/B/A SAM'S CLUB, | § § § § § § | |
| *Defendants.* | § § | |

### MEMORANDUM OPINION AND ORDER

Before the Court are three motions: (1) Intex Recreation Corp. and Intex Trading Ltd.'s Motion to Intervene (Dkt. No. 29); (2) the Coleman Company, Inc.'s Motion to Intervene (Dkt. No. 35); and (3) Bestway (USA), Inc.'s Motion to Intervene (Dkt. No. 64). Having considered these Motions and the relevant authorities, the Court is of the opinion that each of the Motions should be **GRANTED** as set forth herein.

### I. BACKGROUND

On March 29, 2017, Team Worldwide Corporation ("TWW") filed suit against Wal-Mart Stores, Inc., Wal-Mart Stores Texas, LLC, Wal-Mart.com USA LLC, Sam's West, Inc. d/b/a Sam's Club (collectively, "Walmart" or "Defendants"), alleging infringement of U.S. Pat. No. 9,211,018, U.S. Pat. No. 7,346,950, and U.S. Pat. No. 7,246,394 (collectively, the "Asserted Patents"). On June 5, 2017, Walmart filed its answer. (Dkt. No. 16.) In July, this Court held a scheduling conference where counsel for TWW and Walmart appeared before the Court.

On August 2, 2017, Intex Recreation Corp. and Intex Trading Ltd. (collectively, "Intex") sought this Court's permission to intervene pursuant to Fed. R. Civ. P. 24. (Dkt. No. 29.) Intex Recreation Corp. ("IRC") is responsible for importing, marketing, sales, and domestic distribution of all Intex brand products. (*Id.*; Dkt. No. 29-1 ¶ 10.) Intex Trading Ltd. ("ITL") is a trading entity that enters directly into sales contracts with domestic retailers that purchase Intex products from ITL. (*Id.* ¶¶ 10, 14, 22.) Both IRC and ITL have entered into supplier agreements and sales contracts with Walmart covering the Accused Products. The agreements include provisions in which IRC and ITL have agreed to indemnify Walmart as to certain claims relating to the Accused Products, including patent infringement. (Dkt. No. 29 at 9; Dkt. No. 29-1 ¶¶ 16-17.) After TWW filed this suit, Walmart requested indemnification from IRC and ITL; IRC acknowledged its indemnification obligations on May 12, 2017 and ITL acknowledged its obligations on May 15, 2017. (*Id.*)

On August 3, 2017, the Coleman Company, Inc. ("Coleman") sought this Court's permission to intervene pursuant to Fed. R. Civ. P. 24. (Dkt. No. 35.) Coleman sells the accused Coleman and Aerobed branded air mattresses to Walmart and other retailers. *(Id.* at 7; Dkt. No.35-1 ¶¶ 13, 15.) Coleman's employees assist in the design, development, marketing, and distribution of the Coleman Accused Products. (*Id.* ¶ 13.) Coleman also directly executes sales contracts and supply agreements with retailers and sells Coleman and Aero-Bed branded inventory to retailers and wholesalers. (*Id.* ¶¶ 13, 15.) Coleman has entered into indemnification agreements with Walmart in which Coleman specifically agreed to indemnify Walmart for claims of patent infringement asserted against the Accused Products. *(Id.* ¶ 15.) After TWW filed their suit, Walmart requested indemnification from Coleman for the claims asserted against the Coleman and

Aerobed branded products. Coleman acknowledged its indemnification obligations on April 27, 2017. *(Id.* ¶ 16).

On October 5, 2017, Bestway (USA), Inc. ("Bestway") sought this Court's permission to intervene pursuant to Fed. R. Civ. P. 24. (Dkt. No. 64.) TWW's infringement contentions, which were served on July 21, 2017, listed products supplied by Bestway as Accused Products. (*See* Dkt. No. 64-3 at 3.) Bestway is the domestic importer of the Bestway branded Accused Products and also supplies a variety of other inflatable products to Walmart. (*Id.* at 4.) Bestway has a supply agreement with Walmart in which Bestway is obligated to indemnify Walmart for claims of patent infringement asserted against the Accused Products. (Dkt. No. 64-3 at 4.) On August 11, 2017, Walmart requested indemnification from Bestway for the claims against the Accused Bestway Products, and Bestway acknowledged its indemnification obligations on September 26, 2017. (*Id.* at 4-5.)

In short, these proposed intervenors—Intex, Coleman, and Bestway—have moved to intervene as defendants in this case. (*See* Dkt. Nos. 29, 36, and 64.) Each proposed intervenor asserts that they are a "true defendant" in this lawsuit—in the spirit of the "customer-suit" exception—and fulfill the requirements of Federal Rule of Civil Procedure 24(a)(2) and must be allowed into the case as intervenor-defendants.[1] (*Id.*) In the alternative, all the proposed intervenors ask that the Court allow them to intervene under Fed. R. Civ. P. 24(b)(2)—i.e. permissive intervention. (*Id.*)

---

[1] The proposed intervenors attempt to invoke the so-called "customer-suit" exception. In the typical customer-suit exception scenario, a patent owner files an infringement suit against a manufacturer's customer and in response the manufacturer then files (usually in a different venue) an action seeking a declaration of noninfringement or patent invalidity. The second filed suit—the suit by the manufacturer —generally takes precedence, an exception to the general first-to-file rule. *See In re Nintendo of Am., Inc.*, 756 F.3d 1363, 1365 (Fed. Cir. 2014) (citing to *Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1357 (Fed.Cir.2011) and *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed.Cir.1990)). The typical customer-suit scenario is different than the one currently before the Court, however, as here there is only one suit in one forum.

## II. LEGAL STANDARD

### A. Mandatory Intervention.

Federal Rule of Civil Procedure 24(a)(2) provides that "[o]n timely motion, the court must permit anyone to intervene who: claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." A proposed intervenor is entitled to mandatory intervention if all of the following elements are satisfied:

> (1) the application for intervention must be timely; (2) the applicant must have an interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the existing parties to the suit.

*Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015) (citing *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 463 (5th Cir.1984)) (en banc). "Failure to satisfy one requirement precludes intervention of right." *Haspel & Davis Milling & Planting Co. v. Bd. of Levee Comm'rs of the Orleans Levee Dist.*, 493 F.3d 570, 578 (5th Cir. 2007).[2]

### B. Permissive Intervention.

Federal Rule of Civil Procedure 24(b)(1) provides that "[o]n timely motion, the court may permit anyone to intervene who: (A) is given a conditional right to intervene by a federal statute; or (B) has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1). "In exercising its discretion, the court must consider whether the

---

[2] The Court notes that the Federal Circuit appears to review Rule 24 under regional circuit law. *See Stauffer v. Brooks Bros., Inc.*, 619 F.3d 1321, 1328 (Fed. Cir. 2010) ("We review the district court's denial of intervention under Rule 24 under regional circuit law…").

intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). Allowing permissive intervention under Rule 24(b) is wholly discretionary even where there is a common question of law or fact. *See New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 471 (5th Cir. 1984).

### III. ANALYSIS

**A. Mandatory Intervention.**

Each of the proposed intervenors argue that they meet all of the four requirements of Rule 24(a)(2) and, therefore, that the Court must allow each to intervene. The Court now addresses each requirement in turn.

**i.   Timeliness.**

Intex and Coleman both argue their motions to intervene are timely because they moved to intervene in the very early stages of this case – i.e. months before claim construction trial and over a year before trial.[3] (Dkt. No. 29 at 12; Dkt. No. 35 at 11.) Additionally, Intex and Coleman argue that their motions are timely because the deadline in this Court's scheduling order to join additional parties is September 5, 2017, which had not yet passed at the time they filed their motions. Both Intex and Coleman assert that the timing of their Motions to Intervene does not prejudice either Walmart or TWW. (Dkt. No. 29 at 12; Dkt. No. 35 at 11.)

In response, TWW argues that Intex's and Coleman's motions are both actually "untimely" and a "delay tactic." (Dkt. No. 48 at 10; Dkt. No. 49 at 10.) TWW states that both Intex and Coleman were dilatory, waiting approximately four months to file their motions upon learning of their interest in the case. (Dkt. No. 48 at 10; Dkt. No. 49 at 11.) They filed their motions after the scheduling conference on July 25, 2017, after infringement contentions were served, and after this

---

[3] "TWW does not challenge Bestway's motion on timeliness grounds." (Dkt. No. 68 at 2 n.1) Considering the requirements for this factor and the record, the Court finds that Bestway's Motion to Intervene is timely.

Court entered a discovery order, a protective order, and a docket control order which sets the trial date for October 1, 2018. Further, TWW contends that Intex's and Coleman's intervention is "specifically intended to prejudice TWW by delaying and fragmenting the lawsuit and increasing TWW's efforts and costs." (Dkt. No 48 at 11; Dkt. No. 49 at 11.) TWW points out that, in contrast, there is no prejudice to Intex or Coleman should their motions be denied, and that this lack of prejudice supports denial of their motions. (*Id.*; Dkt. No. 48 at 11.)

Four factors are relevant to a timeliness determination: (1) "[t]he length of time during which the would-be intervenor actually know[s] or reasonably should have known of his interest in the case before he petitioned for leave to intervene," (2) "[t]he extent of the prejudice that the existing parties to the litigation may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as he actually knew or reasonably should have known of his interest in the case," (3) "[t]he extent of the prejudice that the would-be intervenor may suffer if his petition for leave to intervene is denied," and (4) "[t]he existence of unusual circumstances militating either for or against a determination that the application is timely." *Stallworth v. Monsanto Co.*, 558 F.2d 257, 264 (5th Cir.1977). However, "[t]here are no absolute measures of timeliness." *Edwards v. City of Houston*, 78 F.3d 983, 1000 (5th Cir. 1996). "Accordingly, these factors merely comprise a framework for the analysis of this threshold consideration." *Edwards v. City of Houston*, 78 F.3d 983, 1000 (5th Cir. 1996).

The Court is persuaded that all three proposed intervenors were timely in their requests to intervene as defendants in this case. Intex and Coleman were aware that their interests were affected for approximately four months before filing their motions. This period of preparation is not, in and of itself, unreasonable and in this case does not constitute delay. *See, e.g. Association of Professional Flight Attendants v. Gibbs,* 804 F.2d 318 (5th Cir.1986) (five month lapse found

not unreasonable); *see also Edwards v. City of Houston*, 78 F.3d 983, 1001 (5th Cir. 1996) ("[M]ost of our case law rejecting petitions for intervention as untimely concern motions filed after judgment was entered in the litigation."). The Court also finds no material prejudice would be caused to the existing parties by Intex, Coleman, or Bestway for not seeking to intervene as soon as possible after learning of their interest in this case. *Id*. ("This factor is concerned only with the prejudice caused by the applicants' delay, not that prejudice which may result if intervention is allowed.") As discussed below, without intervention, the Court is persuaded that the interests of Intex, Coleman, and Bestway would be prejudiced. Lastly, the Court fails to find any unusual circumstances that would call for a determination that any of these motions to intervene are untimely. Utlimately, the Court finds that Intex, Coleman, and Bestway have each met the timeliness requirement of Federal Rule of Civil Procedure 24(a)(2).

    **ii.    Interest in the Case.**

All three proposed intervenors argue that they meet Rule 24(a)(2)'s requirement that intervenors must have an "interest relating to the property or transaction." Intex and Coleman argue that they have a direct, substantial, and legally protectable interest in this litigation because: (1) each is a "true defendant" to the Plaintiff's claims against the Accused Products as manufacturers or product suppliers of the Accused Products; (2) each sells Accused Products to other customers in the United States, so they have a greater interest in directly defending the potential claims against those products; (3) there is potential harm which may befall their other customer relationships should Walmart be found to infringe; and (4) each is obligated to indemnify Walmart for the Accused Products and thus each has a contractually created financial interest in the litigation. (Dkt. No. 29 at 13; Dkt. No. 35 at 12; Dkt. No. 64 at 10-12).

Bestway argues that it has a direct, substantial, and legally protectable interest in this litigation because: (1) Bestway has commercial interests in foreclosing liability for all past sales; (2) the litigation may result in Bestway's products being enjoined from being imported and sold throughout the U.S.; and (3) this litigation may impact Bestway's reputation as a reliable product supplier. (Dkt. No. 64 at 12-13.)

TWW's primary response is that indemnification alone does not give the proposed intervenors an *ipso facto* right to intervene. Indemnification indicates, rather, a contingent, hypothetical liability that is not the kind of direct interest that is prerequisite to intervention. (Dkt. No. 48 at 7; Dkt. No. 49 at 7; Dkt. No. 68 at 7.) TWW also pushes back against the proposed intervenors assertions that each is a "true defendant" because"[t]he patent laws do not require that TWW sue a manufacturer or wholesaler" and that the proposed intervenors have "no right to determine how TWW protects its patent rights." (Dkt. No. 48 at 7; Dkt. No. 49 at 7-10; Dkt. No. 68 at 7-11.)

While Rule 24(a)(2) requires a "direct, substantial, legally protectable interest in the proceedings," *Texas*, 805 F.3d at 657, "the 'interest' test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Sierra Club v. Espy*, 18 F.3d 1202, 1207 (5th Cir. 1994). The interest "inquiry turns on whether the intervenor has a stake in the matter that goes beyond a generalized preference that the case come out a certain way." *Id.*

In this case, each of the proposed intervenors' interests goes beyond a generalized preference that the case come out a certain way. First, Intex's, Coleman's, and Bestway's products, not Walmart, will be the focus of the litigation. Additionally, each has acknowledged a contractual obligation to defend and indemnify Walmart, giving each a resulting financial stake in the outcome

8

of this case. *See Kadlec Med. Ctr. v. Lakeview Anesthesia Associates*, CIV.A. 04-997, 2004 WL 2035005, at *2 (E.D. La. Sept. 10, 2004) (Where the named defendant "will seek indemnification against [the intervenor]," the interest requirement is met by the intervenor's "interest in having its obligations under the [indemnification agreement] established."). Further, and as the proposed intervenors argue, the ongoing sale and distribution of their products is put at risk by TWW's allegations of infringement. *See U.S. Ethernet Innovations, LLC v. Acer, Inc.*, 6:09-CV-448-JDL, 2010 WL 11488729, at *2 (E.D. Tex. May 10, 2010) ("Courts have held that beyond the injury that might arise from having to indemnify customers, a manufacturer such as Intel faces the loss of its customer base and reputation as a result of patent infringement allegations.") The Court finds that determining whether or not Walmart's sales of their products infringe the Asserted Patents satisfies Rule 24(a)(2)'s requirement as to these intervenors.

     **iii.**    **The Impairment Requirement.**

Intex and Coleman argue that interests may be impaired because: (1) indemnification obligations impute responsibilities for potential money judgments; (2) adverse rulings could impact each proposed intervenor's relationships with other retail customers; and (3) an adverse judgment could also create precedent that could be used against each proposed intervenor and their customers in other proceedings related to the Accused Products. (*See* Dkt. No. 29 at 16; Dkt. No. 35 at 14-15.)

Similarly, Bestway argues that Walmart: (1) has no obligation to defend the Bestway Products or to adopt a legal strategy provided by Bestway; and (2) is "not sufficiently vested in the inflatable industry or knowledgeable about Bestway Products and prior art to mount as effective a defense as if Bestway was defending its own products." (Dkt. No. 64 at 13.)

TWW argues in response that the proposed intervenors's interests will not be impaired or impeded because each proposed intervenor is already in control or is, at the very least, currently

9

participating in the defense of their products in this case and because all three proposed intervenors will be involved in discovery. (Dkt. No. 48 at 5-6; Dkt. No. 49 at 6-7; Dkt. No. 68 at 6.) TWW cites to two letters from ITL and IRC to Walmart in which ITL and IRC accepted their indemnification obligations to support this proposition. Intex appears to have conditioned its acceptance of its indemnification obligations on several terms, such as the following:

> 6. Walmart consents to the employment of attorneys selected by Intex and Walmart understands and agrees that Faegre Baker Daniels, as counsel for Intex, will assume control over defense for Intex Products . . . Walmart also understands and agrees that Faegre Baker Daniels will continue to represent Intex throughout the proceedings, even if a conflict should arise and the defense of the claims is re-tendered to Walmart, and Walmart consents and agrees it will raise no objection to Intex continuing to use such counsel engaged by it at any stage of the proceedings so long as Intex's use of such counsel is not prohibited by the applicable rules of professional conduct notwithstanding this consent; and
>
> 7. Walmart will cooperate fully in the investigation in the defense of this action, including, but not limited to, making available for Intex review, all documents and things of Walmart, and agreeing to consult with Intex and be present or testify at deposition or trial, if requested to do so.

(Dkt. No. 29-1, Ex. A, ¶ 6-7.) According to TWW, these terms illustrate that Intex's interests will not actually be impaired or impeded if Intex is not allowed to intervene in this case.

Additionally, TWW argues that there is not any complicated engineering that would warrant Intex's, Coleman's, or Bestway's intervention. (*See* Dkt. No 48 at 6; Dkt. No. 49 at 6; Dkt. No. 68 at 6). TWW asserts that each proposed intervenor is already protected without intervening. (*See* Dkt. No 48 at 6; Dkt. No. 49 at 6; Dkt. No. 68 at 6).

Ultimately, and considering the totality of the present circumstances, the Court finds that the disposition of this action may, as a practical matter, impair or impede the proposed intervenors abilities to protect their interests. Accordingly, this requirement is met.

### iv. Inadequacy of Representation.

The primary argument of the proposed intervenors in support of their intervention is that if Walmart were to defend the suit on its own then Walmart would, in effect, be representing the interests of all the proposed intervenors and other implicated manufacturers or suppliers, each of whom are competitors with each other. (Dkt. No. 29 at 12; Dkt. No.35 at 16; *see* Dkt. No. 64 at 16.) Since "it is possible that [the proposed intervenors] interests on the merits of the claims may diverge from those of [the other proposed intervenors]," Wal-Mart could not, in that event, adequately represent each of the competitor's discrete interests. (Dkt. No. 29 at 16; Dkt. No. 35 at 16.)

TWW responds that Walmart can defend itself in this case against claims of infringement against several products it sells, only some of which it obtained for resale from each of the individual proposed intervenors; that the proposed intervenors have not shown that their interests are in fact different from Wal-Mart; that the proposed intervenors have not alleged or shown the requisite adversity of "interest, collusion, or nonfeasance; and that the proposed intervenors are not adding any new strategies or defenses to the case." (Dkt. No. 48 at 3-5; Dkt. No. 49 at 3-5; Dkt. No. 68 at 3-5.)

The movants' burden to satisfy this requirement is a light one. *See Texas*, 805 F.3d at 661 (5th Cir. 2015)("[Rule 24(a)(2)] is satisfied if the applicant shows that the representation of his interest 'may be' inadequate.") Although each proposed intervenor may have the same ultimate objective as Walmart—avoiding or minimizing liability—in this case, the proposed intervenors may rebut this by showing the existence of an "adversity of interest, collusion, or nonfeasance on the part of the existing party." *Edwards v. City of Houston*, 78 F.3d 983, 1005 (5th Cir. 1996). Each proposed intervenor provides a product to Walmart that *directly* competes with other

products, sold by Walmart, including those of the other proposed intervenors. The Court agrees that Walmart's interest in this suit may diverge from that of each individual proposed intervenor's interest, and, as a result, finds that Walmart *may* not adequately represent each proposed intervenor's interest in this case. That is all that Rule 24(a)(2) requires. *See Heaton v. Monogram Credit Card Bank of Georgia*, 297 F.3d 416, 425 (5th Cir. 2002) ("That the FDIC's interests and Monogram's may diverge in the future, even though, at this moment, they appear to share common ground, is enough to meet the FDIC's burden on this issue.")

   v.  **Granting Intervention as of Right.**

Since all proposed intervenors—Intex, Coleman, and Bestway—meet the requirements of Rule 24(a)(2), the Court finds that the proposed intervenors should be allowed to intervene in the instant proceeding as of right. Accordingly, the Motions are **GRANTED**.

**B. Permissive Intervention.**

The Court, in the pursuit of completeness and out of an abundance of caution, will next alternatively address whether permissive intervention would be appropriate in this case. Intex, Coleman, and Bestway request the Court's permission to intervene under Federal Rule of Civil Procedure 24(b). Each argues that their products are alleged to infringe the patents asserted by TWW and, thus, that their defenses would share common questions of law and fact with Walmart's defenses. (Dkt. No. 29 at 18; Dkt. No. 35 at 17; Dkt. No. 64 at 17.) In addition, each proposed intervenor argues that their intervention would not create undue delay or prejudice to the original parties. (Dkt. No. 29 at 18; Dkt. No. 35 at 17; Dkt. No. 64 at 17.)

TWW's primary argument in opposition to the proposed intervenors' plea under Rule 24(b) is that intervention would cause them undue delay and prejudice. Specifically, TWW argues that the proposed intervenors intend to delay and fragment the lawsuit to purposefully increase TWW's

burden and costs and that such intent has been disclosed and illustrated by the proposed intervernors' announced plans to sever, stay, and transfer this case.[4]

TWW's arguments do not persuade the Court. All the proposed intervenors make, sell, or distribute Accused Products and will bring defenses of non-infringement, invalidity, and other defenses which overlap with Walmart's defenses.[5] (*See* Dkt. Nos.16, 29-3, and 64-1.) Within these defenses there are numerous common questions of law and fact, such as: (1) whether the claims asserted in the Asserted Patents are valid and enforceable; and (2) whether the Intex's, Coleman's, or Bestway's products, and Walmart's sales of said products, infringe the Asserted Patents. *See U.S. Ethernet Innovations, LLC v. Acer, Inc.*, 6:09-cv-448-JDL, 2010 WL 11488729, at *2 (E.D. Tex. May 10, 2010).

Further, the proposed intevernors's motions to intervene are sufficiently timely and, permitting intervention will not unduly prejudice the adjudication of the original parties' rights. Despite the proposed intervenors' disclosed plans to sever, fragment, stay, or transfer this case, any concern of TWW that these future actions will actually come to pass and cause them prejudice falls into the category of speculation, at this junction. However, this does not mean TWW cannot raise a more concrete understanding of prejudice at a later date in response to such anticipated efforts. Additionally, this case is still in a relatively early enough stage to allow TWW and Walmart

---

[4] Though clearly laid out in the proposed intervenors' briefing, the Court is puzzled by this stated plan of action, as "decisional authority and commentators alike have recognized that '[v]enue is a privilege personal to a defendant in a civil suit and a person intervening on either side of the controversy may not object to improper venue.'" *Defs. of Wildlife v. Bureau of Ocean Energy Mgmt., Regulation, & Enf't*, 791 F. Supp. 2d 1158, 1173 (S.D. Ala. 2011) (collecting cases); 7C Wright, Miller & Kane, *Federal Practice and Procedure: Civil 3d* § 1918 ("The intervenor cannot question venue. By voluntarily entering the action the intervenor has waived the privilege not to be required to engage in litigation in that forum."); 6 *Moore's Federal Practice*, § 24.22[3] (3d Ed.) ("A person who intervenes as plaintiff or defendant may not object to the venue chosen for the action. Since the intervenor specifically invoked the jurisdiction of the court, any potential venue objections are considered waived.").

[5] The Court notes that proposed intervenor Coleman did not attach an intervenor's answer. However, the Court discerns that Coleman's defenses, if raised, would share common questions of law and fact with Walmart's defenses due to the Coleman brand Accused Products at issue in this case, and the Court nonetheless proceeds with its analysis on that basis.

to prepare adequately for discovery, claim construction, and trial, even with the addition of the proposed intervenors.

Accordingly, the Court finds that the requirements of Rule 24(b) have been met in this case and that Intex, Coleman, and Bestway shall be and are **GRANTED LEAVE** to intervene.

## C. Rule 24(c)'s Pleading Requirement.

The Court notes that Coleman did not attach an intervenor's answer as an exhibit to its Motion to Intervene. TWW submits that for this reason alone the Court could deny the Coleman's Motion to Intervene as Rule 24(c) requires that "[t]he motion must state the grounds for intervention and be accompanied by a *pleading* that sets out the claim or defense for which intervention is sought." Fed. R. Civ. P 24(c) (emphasis added). However, "[t]he circuits appear to be split in their approach to enforcement of Rule 24(c), with a majority favoring a permissive interpretation of the rule." *Liberty Surplus Ins. Companies v. Slick Willies of Am., Inc.*, CIV.A. H-07-0706, 2007 WL 2330294, at *1 (S.D. Tex. Aug. 15, 2007). For example, the Fifth Circuit has permitted intervention even in the absence of a motion to intervene. *Farina v. Mission Inv. Tr.*, 615 F.2d 1068, 1075 (5th Cir. 1980) ("Although FDIC did not formally file a motion to intervene, as specified in Rule 24(c), it was within the discretion of the District Court to treat the motion to remove as also a motion to intervene, both of which were granted by the Court in its obvious acceptance of FDIC as a party in the suit.") In light of what appears to be a permissive interpretation of Rule 24(c) by the Fifth Circuit, the Court declines to preclude Coleman's intervention on this basis.[6]

---

[6] However, this allowance does not mean that any later argument that Coleman has waived any defense, claim, or argument due to the lack of an attached intervenor's answer has been foreclosed. Such waiver arguments are expressly preserved and may be taken up by the Court in future appearances or motions made by and between the parties.

## IV. CONCLUSION

Accordingly, and for the reasons set forth above, the Court finds that (1) Intex's Motion to Intervene (Dkt. No. 29); (2) Coleman's Motion to Intervene ("Coleman") (Dkt. No. 35); and (3) Bestway's Motion to Intervene (Dkt. No. 64) should be and are hereby **GRANTED**. Accordingly, Intex, Coleman, and Bestway are **GRANTED LEAVE** to file their Answers in Intervention, which they shall do within fourteen (14) days of this Order.

Additionally, in light of this Order, the following five Motions hereby are **DENIED AS MOOT**: (1) Motion for Hearing (Dkt. No. 66); (2) Motion to Stay All Deadlines Pending Resolution of Proposed Intervenors' Motions (Dkt. No. 77); (3) Unopposed Motion to Expedite Briefing on Motion to Stay (Dkt. No. 78); (4) Coleman's Motion to Amend (Dkt. No. 54) its Motion to Intervene ; and (5) Coleman's Amended Motion to Intervene (Dkt. No. 55).

**So ORDERED and SIGNED this 7th day of December, 2017.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE