# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| TEAM WORLDWIDE CORPORATION, | § § § | |
| *Plaintiff*, | § § | CIVIL ACTION NO. 2:17-CV-00235-JRG |
| v. | § § § | |
| WAL-MART STORES, INC., WAL-MART STORES TEXAS, LLC, WAL-MART.COM USA LLC, SAM'S WEST, INC. D/B/A SAM'S CLUB, | § § § § § § § | |
| *Defendants*. | § § | |

## **MEMORANDUM OPINION AND ORDER**

Before the Court are five Motions: (1) Intex Recreation Corp. and Intex Trading Ltd.'s (collectively, "Intex") Motion to Sever Claims for Misjoinder (Dkt. No. 86); (2) Intex's Motion to Sever, Change Venue, and Stay (Dkt. No. 88); (3) Bestway (USA), Inc.'s ("Bestway") Motion to Sever and Transfer (Dkt. No. 93); (4) the Coleman Company, Inc.'s ("Coleman") Motion to Sever Claims for Misjoinder (Dkt. No. 94); and (5) Coleman's Motion to Sever, Change Venue, and Stay (Dkt. No. 96.) Having considered the Motions, the Court is of the opinion that the Motions should be and hereby are **DENIED** as set forth herein.

## I. BACKGROUND

On March 29, 2017, Team Worldwide Corporation ("TWW") filed suit against Wal-Mart Stores, Inc., Wal-Mart Stores Texas, LLC, Wal-Mart.com USA LLC, Sam's West, Inc. d/b/a Sam's Club (collectively, "Walmart" or "Defendants"), alleging infringement of U.S. Pat. No. 9,211,018, U.S. Pat. No. 7,346,950, and U.S. Pat. No. 7,246,394 (collectively, the "Asserted

Patents"). On June 5, 2017, Walmart filed its answer. (Dkt. No. 16.) In July, this Court held a scheduling conference where counsel for TWW and Walmart appeared before the Court.

On August 2, 2017, Intex sought this Court's permission to intervene pursuant to Fed. R. Civ. P. 24. (Dkt. No. 29.) One day later, Coleman sought this Court's permission to intervene. (Dkt. No. 35.) On October 5, 2017, Bestway (USA), Inc. ("Bestway") also sought this Court's permission to intervene. (Dkt. No. 64.) In their Motions, each intervenor also expressed an intent, after being allowed to intervene, to seek severance for misjoinder, and to seek transfer of the newly severed cases for improper venue or convenience. On December 7, 2017, the Court allowed Intex, Coleman, and Bestway to intervene as of right.[1] (Dkt. No. 84.)

Shortly thereafter, the intervenors filed the motions currently before the Court.[2] Each intervenor asks this Court to sever the "peripheral defendant" Walmart,[3] and transfer the new cases against each intervenor, and then stay the remaining case against Walmart. (*See, e.g.*, Dkt. No. 88 at 10.) With respect to transfer, each intervenor argues that venue in this District is improper or, in the alternative, that venue is clearly more convenient in each intervenor's requested transferee District.[4] (Dkt. No. 88 at 2; Dkt. No. 93 at 5; Dkt. No. 96 at 8.)

---

[1] The Court, in the alternative and out of an abundance of caution, also found that permissive intervention was appropriate under Fed. R. Civ. P. 24(b). (Dkt. No. 84.)

[2] Intex, Coleman, and Bestway (collectively, "the intervenors") filed Motions (Dkt. Nos. 86, 93, 94) seeking to sever each intervenor into a separate case pursuant to 35 U.S.C. § 299. Along with their Motions to Sever for Misjoinder, Intex and Coleman filed separate Motions to Sever, Transfer, and Stay. (Dkt. Nos. 88, 96.) Bestway filed one Motion, addressing its misjoinder and sever, transfer, and stay arguments. (*See* Dkt. No. 93.)

[3] According to the intervenors, Walmart is merely a peripheral defendant because Walmart does not develop, design, or manufacture the Accused Products. (*Id*.) It is undisputed, however, that Walmart does sell the Accused Products, an action which is an independent basis, by statute, upon which a claim for patent infringement may be brought. 35 U.S.C. 271(a) ("whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent."). Intervenors characterize Walmart as "peripheral." The Court does not.

[4] Each intervenor seeks transfer to different venues—Intex to the Central District of California, Coleman to the Northern District of Illinois, and Bestway to the District of Arizona. (Dkt. No. 88 at 2; Dkt. No. 93 at 5; Dkt. No. 96 at 8.)

## II. APPLICABLE LAW

### A. Joinder of Parties – 35 U.S.C. § 299

Under Section 19(d) of the Leahy–Smith America Invents Act, P.L. 112-29 ("the AIA") (codified as 35 U.S.C. § 299), plaintiffs may only join multiple defendants accused of patent infringement (notwithstanding Rule 24) if:

> (1) any right to relief is asserted against the parties jointly, severally, or in the alterative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences relating to the making, using, importing into the United States, offering for sale, or selling of the same accused product or process;
>
> **<u>and</u>**
>
> (2) questions of fact common to all defendants or counterclaim defendants will arise in the action.

35 U.S.C. § 299(a) (emphasis added).

If parties are "misjoined" under § 299, then Fed. R. Civ. P. 21 provides a remedy.[5] "On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Fed. R. Civ. P. 21.

### B. The Venue Inquiry – 1400(b)

"Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b); *TC Heartland LLC v. Kraft Foods Group Brands LLC*, 137 S. Ct. 1514 (2017). This statutory language permits venue under either of two distinct inquiries. The first depends on where each defendant "resides." 28 U.S.C. § 1400(b). The second depends on where each defendant has a "regular and established place of business," so long

---

[5] This remedy is not required in every case. Indeed, a defendant may choose to waive the patent-specific misjoinder defense afforded by § 299. *See* 35 U.S.C. § 299(c) ("Waiver.—A party that is an accused infringer may waive the limitations set forth in this section with respect to that party.")

as that place is also "where the defendant has committed acts of infringement." *Id*. If venue is not proper under either inquiry, a court must dismiss the case or transfer it to a district in which the case could have originally been brought, with the appropriate action determined according to the interests of justice. Fed. R. Civ. P. 12(b)(3); 28 U.S.C. § 1406(a).

### C. Convenience Transfer – 1404(a)

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The purpose of Section 1404(a) is "to prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (quoting *Cont'l Grain Co. v. Barge F.B.L.*—585, 364 U.S. 19, 26, 27 (1960)).

### III. ANALYSIS

### A. Motions to Sever Pursuant to 35 U.S.C. § 299

Each intervenor argues that this Court is required to sever the claims against them based on Fed. R. Civ. P. 21 and 35 U.S.C. § 299 because their intervention in this case is as of right. Thus, the intervenors contend that they are entitled to raise, personally, any defenses Walmart, the original party, could have raised. (*See*, e.g., Dkt. No. 86.) In their view, severance is required "because Plaintiff cannot plausibly allege that there is any overlap or shared technology between the Accused Products and Competitor products" and "there is no allegation of a joint venture." (*Id*. at 11.)

In response, TWW argues that § 299 does not and should not apply because the intervenors have entered this action under Rule 24 (intervention) and not Rule 20 (joinder). (*See*, *e.g.,* Dkt. No. 102 at 2 ("***[T]his case is not about TWW's claims against <u>Intex</u>.*** TWW has brought no claims

against Intex. TWW's claims are against Wal-Mart. ***Nor has TWW joined*** Intex, Coleman, Aerobed, Bestway, or any other of the 'Competitors' that Intex complains are 'misjoined.' These voluntary intervenors entered the case on their own motions.") (emphasis original).)

TWW also argues that if the Court finds Section 299 applicable in this case, the intervenors and Walmart have waived their "misjoinder" defense. (*See*, *e.g., id.* at 4–5 (citing § 299(c))). While recognizing the limited authority on § 299 waiver, TWW maintains that "th[is] situation is akin to the other jurisdiction waiver that courts have applied to intervention," such as personal jurisdiction and venue. (Dkt. No. 102 at. 5.)

Ultimately, the Court agrees with TWW. Section 299 does not and should not apply in this case because the intervenors did not enter this case under the joinder rules of Rule 20. By its own terms, Section 299 applies to joinder:

> § 299. **Joinder** of parties:
>
> (a) **Joinder** of Accused Infringers.--With respect to any civil action arising under any Act of Congress relating to patents, other than an action or trial in which an act of infringement under section 271(e)(2) has been pled, parties that are accused infringers may be joined in one action as defendants or counterclaim defendants, or have their actions consolidated for trial, only if--
>
>> (1) any right to relief is asserted against the parties jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences relating to the making, using, importing into the United States, offering for sale, or selling of the same accused product or process; and
>>
>> (2) questions of fact common to all defendants or counterclaim defendants will arise in the action.
>
> (b) Allegations Insufficient for **Joinder**.--For purposes of this subsection, accused infringers may not be joined in one action as defendants or counterclaim defendants, or have their actions consolidated for trial, based solely on allegations that they each have infringed the patent or patents in suit.
>
> (c) Waiver.--A party that is an accused infringer may waive the limitations set forth in this section with respect to that party

35 U.S.C. § 299 (emphasis added). Joinder and intervention are different things. There is nothing in the statutory text that expands the scope of § 299 beyond joinder so as to apply to intervention. First, section (a) describes how, in limited circumstances, a plaintiff can join accused infringers in the same action. Section (b) explains that accused infringers may not be joined in one action based solely on allegations that each accused infringer infringed the patent or patents in the suit. Section (c) provides for a mechanism by which a party may waive a misjoinder defense. The word "intervention" is nowhere to be found in the statute.

Any discussion of intervention is also absent from the legislative history of § 299.[6] For example, the House Report accompanying the AIA states:

> The Act also addresses problems occasioned by the **joinder** of defendants (sometimes numbering in the dozens) who have tenuous connection to the underlying disputes in patent infringement suites.
>
> The Act amends chapter 29 of the Patent Act by creating a new § 299 that addresses **joinder under Rule 20** and **consolidation of trials under Rule 42**. Pursuant to the provision, parties who are accused infringers in most patent suits may be joined as defendants or counterclaim defendants only if (1) relief is asserted against the parties, jointly, severally, or in the alternative, arising out of the same transaction regarding the manufacture, use, or importation of the accused product or process; and (2) questions of fact common to all of the defendants will arise in the action. New § 299 also clarifies that **joinder** will not be available if it based solely on allegations that a defendant has infringed the patent(s) in question.

H.R. REP. NO. 112-98 pt.1 at 54–55 (2011) (emphasis added). Congressman Smith, a named author of the bill, also explained:

> The bill also restricts **joinder rules** for patent litigation. Specifically, it restricts **joinder** of defendants to cases arising out of the same facts and transactions, which

---

[6] *Train v. Colorado Public Interest Research Group, Inc.*, 426 U.S. 1, 9–10 (1976) ("To the extent that the Court of Appeals excluded reference to the legislative history of the FWPCA in discerning its meaning, the court was in error. As we have noted before: 'When aid to construction of the meaning of words, as used in the statute, is available, there certainly can be no 'rule of law' which forbids its use, however clear the words may appear on 'superficial examination.''" (citing *United States v. American Trucking Assns.*, 310 U.S. 534, 543-544 (1940))). The words of the instant statute are clear: intervention is not implicated by § 299. This holding is supported and confirmed through the relevant legislative history.

6

ends the abusive practice of treating as codefendants parties who make completely different products and have no relation to each other.

157 Cong. Rec. H4420 (June 22, 2011) (statement of Rep. Smith) (emphasis added). In the Senate, one key architect[7] of the AIA explained:

> Section 19(d) of the present bill adds a new section 299 to title 35. Actually, this new section bars **joinder of accused infringers as codefendants**, or **consolidation of their cases for trial**, if the only common fact and transaction among the defendants is that they are alleged to have infringed the same patent. This provision effectively codifies current law as it has been applied everywhere outside the Eastern District of Texas. H.R. 1249 as introduced applied only to **joinder** of defendants in one action. As amended in the mark up and in the floor managers' amendment, the bill extends the limit on **joinder** to also bar **consolidation** of trials of separate actions.
>
> . . . .
>
> [S]ection 299's purpose of allowing unrelated patent defendants to insist of being tried separately would be undermined. Section 299 thus adopts a common standard for both **joinder of defendants** and **consolidation of their cases for trial**.

157 Cong. Rec. S5402 (Sept. 8, 2011) (statement of Sen. Kyl) (citations omitted) (emphasis added).

This legislative history further buttresses the text of the statute and confirms the Court's holding that § 299 does not apply here. The intervenors' argument only succeeds if Rule 24 Intervention and Rule 20 Joinder are one in the same, a proposition they actually advance. Intervenors are wrong. As Courts have repeatedly acknowledged, Rule 20 (joinder) is not the same as Rule 24 (intervention). For example, in *Binson v. J.E. Robert Co.*, the district court stated that "[u]nlike a motion for joinder under Rule 20, which must be made by an existing party to the action, Rule 24 allows for the intervention of a new party to an action in the absence of a motion

---

[7] *SAS Inst., Inc. v. Complementsoft, LLC.*, 842 F.3d 1223, 1224 (Fed. Cir. 2016) (Newman, J., dissenting) (noting that "Senator Kyl [was] a principal architect of the legislation").

from an already existing party." No. 03-cv-3562 (JG), 2006 U.S. Dist. LEXIS 101012, at *30-31 (E.D.N.Y. June 27, 2006).

In the glaring absence of support from within the statutory text or legislative history, the intervenors ask the Court to focus on the "policies" behind § 299.[8] According to the intervenors, "Congress adopted 35 U.S.C. § 299 to prohibit patentees from suing multiple competitors each selling distinct and unrelated products in the same case, because this tactic leaves such competitors in 'a mass pit with others to suit [P]laintiff's convenience.'" (Dkt. No. 103 at 2 (citing to *In re EMC Corp.*, 677 F.3d 1351, 1355 (Fed. Cir. 2012) (quoting another source)). The intervenors caution against what they say amounts to allowing TWW to use "Walmart as a pawn to prosecute an infringement case against multiple competing manufacturers together in a single lawsuit in Plaintiff's preferred venue." (*See*, *e.g.*, *id.*)

Ultimately, the intervenors' policy arguments are unavailing. First, courts exist to interpret and apply the law, not to write it.[9] As such, the Court may not ignore the language of the statute and effectively write intervention into § 299. *See Blount v. Rizzi*, 400 U.S. 410, 419 (1971) ("[I]t is for Congress, not this Court, to rewrite the statute.") Second, as noted above, the specific circumstance that § 299 was employed to fix—*i.e.* the **forced**[10] joinder by plaintiffs of dozens of defendants who have tenuous connections to each other—has not occurred in this case.[11] TWW did not compel the intervenors' attendance; on the contrary, the intervenors came to this court of

---

[8] The intervenors assert that "Plaintiff asks this Court to ignore § 299 . . . and the underlying policies [it is] designed to protect." (Dkt. No. 103 at 2.)
[9] "It is emphatically the province and duty of the judicial department to say what the law is." *Marbury v. Madison*, 5 U.S. 137, 177 (1803).
[10] In fact, Congress specifically allowed for multiple defendants to join a lawsuit, so long as they were not forced to do so. § 299(c) (allowing defendants to waive joinder rules).
[11] Section 299 constrains "patentees from suing multiple competitors each selling distinct and unrelated products in the same case." (*Id.*) However, TWW did not sue multiple competitors. TWW did not sue anyone other than Walmart. The presence of multiple competitors is entirely a result of Intex's, Coleman's, and Bestway's intentional intervention, rather than any forced joinder by Plaintiff (which § 299 would preclude).

8

their own volition and sought permission to intervene thereby inserting themselves into the current case. Having caused this to happen, the intervenors may not now complain as though they bear no responsibility for their current posture. [12]As one commentator explained:

> In enacting this new statutory provision, Congress and the President took a significant step toward correcting a perceived problem plaguing patent infringement litigation—so-called "patent trolls" joining numerous unrelated accused infringers in inconvenient venues . . . . It constructs a substantial barrier for **plaintiffs** who wish to join accused infringers in one case and in one trial . . . . [P]atent owners not joining potential infringers is the opposite of the presumed problem that § 299 seeks to address, excessive joinder.

*See* David O. Taylor, *Patent Misjoinder*, 88 N.Y.U.L. Rev. 652, 654–655, 720–21 (2013) (emphasis added).

In sum, absent a total abrogation of Rule 24, as compared to Rule 20, in patent cases, the Court is neither inclined nor empowered to sever the Intervenors into separate cases pursuant to § 299.[13] Accordingly, the Court hereby **DENIES** each of the Intervenors' Motions to Sever pursuant to 35 U.S.C. § 299.

### B. Motions to Sever, Transfer, and Stay

Each intervenor has also asked the Court to sever each intervenor into its own case, and then transfer each to a separate venue, while the underlying case against Walmart is stayed. (Dkt. No. 88; Dkt. No. 93; Dkt. No. 96.) Specifically as to transfer, each intervenor argues that venue is

---

[12] The Court notes that, standing issues aside, the intervenors could have filed Declaratory Judgment Actions (in this or other venues) against TWW but chose to intervene instead. It is clear that nothing about intervenors' conduct is accidental or unintended.

[13] Alternatively, even if § 299 applied in this case, the intervenors waived their "misjoinder" defense by voluntarily intervening in this case. At least one court has found an intervenor-defendant and the original defendant to have waived their "misjoinder" defense under similar circumstances. *See Richmond v. Jiawei N. Am. Inc.*, CIV.A. 13-1953 MLC, 2015 WL 326247, at *2 (D.N.J. Jan. 29, 2014) ("[T]he Court is unaware of any decision that interprets 35 U.S.C. § 299 as prohibiting the Court from adding a party pursuant to Rule 21.") As in *Richmond*, the original defendant in this case—Walmart—did not file a response or otherwise object to the intervenors' motions to intervene. *See id.* Thus, Walmart "acquiesced" to the intervenors' presence in this case as intervenors, and as such, defendants and can no longer assert a "misjoinder" defense. More importantly, by voluntarily intervening into this case, the intervenors themselves waived their "misjoinder" defenses. *See* § 299(c). Accordingly, the Court finds that even if § 299 applied in this case, the intervenors waived their "misjoinder" defense and that the Motions should be denied on that basis alone.

improper in this District and, alternatively, that venue is clearly more convenient elsewhere. (Dkt. No. 88; Dkt. No. 93; Dkt. No. 96.)

However, TWW argues that by intervening into the case, the intervenors waived their ability to object to venue. (Dkt. No. 101 at 2 ("There is ample authority stating that an intervenor, even one of right, waives its right to challenge venue. For example, when this Court granted Intex's motion to intervene, it also held that by requesting intervention, Intex waived its right to object to venue or request transfer. In so finding, the Court is in good company; many other courts have held the same.") (citations omitted).)

The intervenors disagree,stating that "[t]here is substantial precedent that a defendant intervening as of right and with the express purpose of challenging venue has not waived venue." (*See, e.g.,* Dkt. No. 88 at 13.) However, the intervenors lean heavily on a single case, *S.E.C. v. Ross*, 504 F.3d 1130 (9th Cir. 2007), which held that '[i]f the third party is intervening of right, as [intervenor-defendant] was here, we see little reason to deprive him of any of his procedural defenses merely because the original plaintiff failed to name him as a defendant . . . .'" *Id.* The intervenors argue that "[t]he exact reasoning in *Ross* is applicable here." (*See, e.g.*, Dkt. No. 88 at 14.)

The intervenors also urge that "[f]inding waiver under such circumstances 'would effectively eliminate the unqualified right provided by Rule 12(b) of raising jurisdictional defenses either by motion or answer….'" (*Id.* (citing to *Rates Tech. Inc. v. Nortel Networks Corp.*, 399 F.3d 1302 (Fed. Cir. 2005)). According to the intervenors, "[t]his would be particularly unfair to a defendant who is a party of right in this case." (*See, e.g.*, Dkt. No. 88 at 14.) The intervenors also argue that there is nothing in the Federal Rules of Civil Procedures or in the venue statutes that

10

provides that "an objection to venue is waived *per se* by an intervenor as of right" and that Rule 12 provides only specific circumstances in which 12(b) defenses may be waived. (*Id*.)

TWW challenges the intervenors' reliance on *Ross,* arguing that "decisions [like *Ross*] finding no jurisdictional waiver by intervenors are not persuasive, referring to them as a 'minority view point' with 'with questionable validity.'" (Dkt. No. 101 at 3.) TWW also maintains that Federal Rule of Civil Procedure 24 allows the Court to restrict challenges to venue and that even intervention as of right does not provide the intervenors the opportunity to go back in time and pretend that Plaintiff brought claims against the intervenors in the first instance. (*Id.* at 3–4.)

The intervenors further argue that the contrary authorities identified by TWW are distinguishable. Specifically, the intervenors say that the Second Circuit's holding in *Trans World Airlines, Inc. v. C.A.B.*, 339 F.2d 56 (2d Cir. 1964) is not controlling. (Dkt. No. 88 at 15.) In *Trans World Airlines, Inc.*, the Second Circuit held that a person intervening on either side of the controversy may not object to improper venue. However, the court qualified such waiver by stating that "[b]y doing so without simultaneously or soon thereafter raising a motion directed to venue, [the intervenor] waive[s] a defense of improper venue it may have possessed as an intervenor." (Dkt. No. 88 at 15 (citing *Trans World Airlines, Inc.*, 339 F.2d at 64).) The intervenors argue that they have met this qualification. (*See, e.g.*, Dkt. No. 88 at 15.)

In this case, the intervenors arguments are unavailing. By definition, an intervenor is "[s]omeone who **voluntarily** enters a pending lawsuit because of a personal stake in it." INTERVENOR, Black's Law Dictionary (10th ed. 2014) (emphasis added); *see also* James M. Underwood, *Complex Litigation: A Context and Practice Casebook*, 84 (Michael H. Schwartz et al. eds., 1st ed. 2017) ("It seems odd to say that someone would ever want to **volunteer** herself as

11

a defendant in a lawsuit; however, this is often the gist of an intervenor's motion to join an existing lawsuit.") (emphasis added).

This choice to intervene (or consent to proceed in a particular jurisdiction and venue) has real and far-reaching consequences. For example, and unsurprisingly, courts have held that any objection to personal jurisdiction is waived when an absentee party intervenes and through intervention consents to jurisdiction. *See*, *e.g.*, *In re Bayshore Ford Truck Sales, Inc.*, 471 F.3d 1233, 1249 (11th Cir. 2006) ("Whereas it would not have been the case absent intervention, Westgate willingly submitted to the personal jurisdiction of the district court, and thereby agreed to be bound by the court's decision granting Ford the injunction it requested"); *see also Cty. Sec. Agency v. Ohio Dep't of Commerce*, 296 F.3d 477, 483 (6th Cir. 2002) ("[A] motion to intervene is fundamentally incompatible with an objection to personal jurisdiction.") *Gradel v. Piranha Capital, L.P.*, 495 F.3d 729, 731 (7th Cir. 2007) ("But can a court in Chicago issue an order that will affect funds held by a court in California? In this case it can, because the receiver intervened in the Chicago suit and by doing so submitted himself to the jurisdiction of the court in which that suit was pending.")

Even the right to sovereign immunity provided by the Eleventh Amendment to the Constitution can be waived by intervention. In *84 Video/Newsstand, Inc. v. Sartini*, for example, the district court noted that the Supreme Court in *Clark v. Barnard* explained:

> The immunity from suit belonging to a state, which is respected and protected by the constitution within the limits of the judicial power of the United States, is a personal privilege which it may waive at pleasure; so that in a suit, otherwise well brought, in which a state had sufficient interest to entitle it to become a party defendant, its appearance in a court of the United States would be a voluntary submission to its jurisdiction.

> Clearly, Clark stands for the proposition that intervention by a state's voluntary intervention in an action before a federal court constitutes waiver of its Eleventh Amendment immunity.

No. 1:07 CV 3190, 2009 WL 10656014, at *22 (N.D. Ohio June 22, 2009) (citing *Clark v. Barnard*, 108 U.S. 436, 447 (1883)), *aff'd*, 455 F. App'x 541 (6th Cir. 2011).

Directly in line with this rationale, and relevant to the instant motions, the Supreme Court has held that intervenors cannot question venue, where a defendant has not exercised that privilege. *See Cent. Tr. Co. v. McGeorge*, 151 U.S. 129 (1894). In *Central Trust Co. v. McGeorge*, a corporation had waived the fact that it was sued in the wrong district by a general appearance and consent to the appointment of a receiver. An objection to venue was subsequently made by stockholders and creditors who intervened and challenged the appointment of the receiver. Despite deciding that neither the complainant nor defendant were residents of the district, the court ruled that the objection, though meritorious, had been waived. *Id.*[14] The Supreme Court then noted:

> It is scarcely necessary to say that, as the defendant company had submitted itself to the jurisdiction of the court, such voluntary action could not be overruled at the instance of the stockholders and creditors, not parties to the suit as brought, but who were permitted to become such by an intervening petition.

*Id.* at 135. It is precisely this sort of "overruling" which the intervenors now seek.

The logic of *Central Trust Co.* has been repeatedly echoed by courts and commentators since 1894. *See* Wright and Miller, 7C Fed. Prac. & Proc. Civ. § 1918 (3d ed.) ("The intervenor cannot question venue. By voluntarily entering the action the intervenor has waived the privilege not to be required to engage in litigation in that forum."); *accord* 6 Moore's Federal Practice, § 24.22[3] (3d Ed.) ("A person who intervenes as plaintiff or defendant may not

---

[14] *See also* James WM. Moore & Edward H. Levi, Federal Intervention I. the Right to Intervene and Reorganization, 45 Yale L.J. 565, 577 n. 147 (1936) ("In *Central Trust Co. v. McGeorge*, the defendant corporation voluntarily submitted itself to the jurisdiction of the court and receivers were appointed. The venue was improper. [The Supreme Court held that the] intervening creditors and stockholders could not raise the objection of improper venue." (citation omitted)).

13

object to the venue chosen for the action. Since the intervenor specifically invoked the jurisdiction of the court, any potential venue objections are considered waived."); *see also Trans World Airlines, Inc. v. C.A.B.*, 339 F.2d 56, 63–64 (2nd Cir.1964) ("Venue is a privilege personal to a defendant in a civil suit and a person intervening on either side of the controversy may not object to improper venue."); *see Commonwealth Edison Co. v. Train*, 71 F.R.D. 391, 394 (N.D. Ill. 1976) (finding waiver of transfer pursuant to 28 U.S.C. § 1404(a)); *Intrepid Potash–New Mexico, LLC v. U.S. Dep't of Interior*, 669 F.Supp.2d 88, 91 (D.D.C. 2009) ("Courts have noted that an intervenor-defendant cannot assert that venue is improper … because such a defendant voluntarily participated in the case and assumed the risk that a court could order relief or enter a judgment against it."); *Beam Laser Systems, Inc. v. Cox Communications, Inc.*, 117 F.Supp.2d 515, 517 (E.D.Va. 2000) (determining that "as an intervenor, SeaChange may not question venue"); *Asbury Glen/Summit Ltd. Partnership v. Southeast Mortg. Co.*, 776 F.Supp. 1093, 1096 (W.D.N.C. 1991) ("As a general matter, it is true that the intervenor cannot question venue.") (citation and internal punctuation omitted); *Recht v. Metro Goldwyn Mayer Studio*, Inc., 2008 WL 4460379, *2 (W.D.Wis. Sept. 29, 2008) ("Even if she were allowed to intervene, Ms. Recht would have no standing to question the venue in this case."); *Dexia Credit Local v. Rogan*, 2008 WL 4543013, *6 (N.D.Ill. Oct. 9, 2008) (observing that intervenors "likely have waived any objection to venue by intervening in this proceeding").

Moreover, as one district court aptly stated, the concept waiver of venue by intervention follows from a line of cases that "are not antiquated, dust-encrusted relics, but instead date all the way through present." *Defs. of Wildlife v. Bureau of Ocean Energy Mgmt., Regulation, & Enf't*, 791 F. Supp. 2d 1158, 1174 (S.D. Ala. 2011) (collecting cases).

The intervenors maintain that *Ross* is controlling. This court disagrees. First, *Ross* is not binding authority on this District or the Federal Circuit. Second, at least one Court and "at least one commentator [have] described the Ninth Circuit's approach in *Ross*, with respect to its finding that intervenors do not waive personal jurisdiction objection, as a 'minority position' of 'questionable' validity." *Defs. of Wildlife*, 791 F. Supp. 2d at 1174 (citing to 6 Moore's Federal Practice, at § 24.22[4]). To find otherwise creates a special venue rule on waiver apart from the rules that apply to personal jurisdiction and sovereign immunity.

In sum, the intervenors cannot now question the propriety or convenience of a venue they chose to enter. *Commonwealth Edison Co. v. Train*, 71 F.R.D. at 394 ("The purpose of venue is to alleviate the hardship on a defendant arising from his being forced to defend a suit in an inconvenient forum. Such a consideration does not apply to an intervenor.") The intervenors voluntarily entered this proceeding and now must litigate in this, their chosen venue.

## IV. CONCLUSION

Accordingly, and for the reasons set forth above, the Court finds that (1) Intex Recreation Corp. and Intex Trading Ltd.'s (collectively, "Intex") Motion to Sever Claims for Misjoinder (Dkt. No. 86); (2) Intex's Motion to Sever, Change Venue, and Stay (Dkt. No. 88); (3) Bestway (USA), Inc.'s ("Bestway") Motion to Sever and Transfer (Dkt. No. 93); (4) the Coleman Company, Inc.'s ("Coleman") Motion to Sever Claims for Misjoinder (Dkt. No. 94); and (5) Coleman's Motion to Sever, Change Venue, and Stay (Dkt. No. 96) should be and hereby are **DENIED**.

Additionally, in light of this Order, the following two Motions are hereby **DENIED AS MOOT**: (1) Intex's Motion to Stay All Deadlines Pending Resolution of Severance and Venue Motions (Dkt. No. 99) and (2) Intex's Motion for Hearing (Dkt. No. 131).

**So ORDERED and SIGNED this 13th day of February, 2018.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE