**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| TEAM WORLDWIDE CORPORATION, | |
| *Plaintiff*, | |
| v. | CIVIL ACTION NO. 2:17-cv-00235-JRG |
| WAL-MART STORES, INC., *et al.*, | |
| *Defendants.* | |

## CLAIM CONSTRUCTION MEMORANDUM OPINION AND ORDER

Before the Court is the opening claim construction brief of Team Worldwide Corporation ("Plaintiff") (Dkt. No. 119, filed on January 16, 2018), the response of Defendants Wal-Mart Stores, Inc., Wal-Mart Stores Texas, LLC, Wal-Mart.com USA LLC, and Sam's West, Inc., and Defendant-Intervenors Bestway (USA), Inc., Intex Recreation Corp., Intex Trading Ltd., and The Coleman Company, Inc. (collectively, "Defendants") (Dkt. No. 133, filed on January 30, 2018), and the reply of Plaintiff (Dkt. No. 134, filed on February 6, 2018). The Court held a hearing on the issues of claim construction and claim definiteness on February 27, 2018. Having considered the arguments and evidence presented by the parties at the hearing and in their briefing, the Court issues this Order.

**Table of Contents**

I.      BACKGROUND ................................................................................................ **3**

II.     LEGAL PRINCIPLES .................................................................................... **4**

    A.    Claim Construction ................................................................................ 4

    B.    Departing from the Ordinary Meaning of a Claim Term ....................... 6

    C.    Definiteness Under 35 U.S.C. § 112, ¶ 2 (pre-AIA) / § 112(b) (AIA) ................. 8

III.    AGREED CONSTRUCTIONS.......................................................................... **8**

IV.    CONSTRUCTION OF DISPUTED TERMS .................................................. **9**

    A.    "inflatable body".................................................................................... 9

    B.    "pipe" ................................................................................................... 14

    C.    "pack" .................................................................................................. 16

    D.    "built in," "built into," and "permanently held" ................................... 19

    E.    The dependent claims purportedly indefinite under 35 U.S.C. § 112, ¶ 4............ 25

V.     CONCLUSION ................................................................................................ **28**

# I.  BACKGROUND

Plaintiff alleges infringement of three U.S. Patents: No. 7,246,394 (the "'394 Patent"), No. 7,346,950 (the "'950 Patent"), and No. 9,211,018 (the "'018 Patent") (collectively, the "Asserted Patents"). The '394 Patent and the '950 Patent are related through priority claims as divisions of an application filed on June 22, 2001. The '018 Patent claims priority to an application filed on April 4, 2000.

In general, the Asserted Patents are directed to technology for inflatable products (e.g., air mattresses) with built-in air pumps.

The abstract of the '394 Patent provides:

> An inflatable product includes an inflatable body, a fan and motor assembly for pumping air, a housing built into the inflatable body, and an air conduit disposed at least in part in the housing. The housing has an interior region. The air conduit is movable between a first position and a second position, the fan and motor inflating the inflatable body when the air conduit is in the first position, and deflating the inflatable body when the air conduit is in the second position. Air flows between the interior region of the housing and the inflatable body during inflation and deflation.

The abstract of the '950 Patent provides:

> An inflatable product includes a first chamber, a pack, and a fan and motor received in the pack. The pack has an air intake connected to the outside of the first chamber and a first air outlet connected to the inside of the first chamber. A first valve for opening and closing the first air outlet is received in the pack. Air is pumped by the fan and motor from the outside of the first chamber through the air intake and the first valve and then into the first chamber from the first air outlet.

The abstract of the '018 Patent provides:

> An inflatable product includes an inflatable body and an electric pump for pumping the inflatable body. The electric pump includes a pump body and an air outlet, wherein the pump body is wholly or partially recessed into the inflatable body and permanently held by the inflatable body. Preferably, the electric pump includes a fan and a motor connected to the fan, and the fan is rotated by the motor in a first direction to pump the inflatable body or in a second direction opposite the first direction to deflate the inflatable body.

## II.    LEGAL PRINCIPLES

### A.    Claim Construction

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting *Innova/Pure Water Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). To determine the meaning of the claims, courts start by considering the intrinsic evidence. *Id.* at 1313; *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 861 (Fed. Cir. 2004); *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Group, Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001). The intrinsic evidence includes the claims themselves, the specification, and the prosecution history. *Phillips*, 415 F.3d at 1314; *C.R. Bard, Inc.*, 388 F.3d at 861. The general rule—subject to certain specific exceptions discussed *infra*—is that each claim term is construed according to its ordinary and accustomed meaning as understood by one of ordinary skill in the art at the time of the invention in the context of the patent. *Phillips*, 415 F.3d at 1312–13; *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003); *Azure Networks, LLC v. CSR PLC*, 771 F.3d 1336, 1347 (Fed. Cir. 2014) ("There is a heavy presumption that claim terms carry their accustomed meaning in the relevant community at the relevant time.") (vacated on other grounds).

"The claim construction inquiry … begins and ends in all cases with the actual words of the claim." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1248 (Fed. Cir. 1998). "[I]n all aspects of claim construction, 'the name of the game is the claim.'" *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1298 (Fed. Cir. 2014) (quoting *In re Hiniker Co.*, 150 F.3d 1362, 1369 (Fed. Cir. 1998)). First, a term's context in the asserted claim can be instructive. *Phillips*, 415 F.3d at 1314. Other asserted or unasserted claims can also aid in determining the claim's meaning, because claim terms are typically used consistently throughout the patent. *Id.* Differences among the claim

terms can also assist in understanding a term's meaning. *Id.* For example, when a dependent claim adds a limitation to an independent claim, it is presumed that the independent claim does not include the limitation. *Id.* at 1314–15.

"[C]laims 'must be read in view of the specification, of which they are a part.'" *Id.* (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc)). "[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Id.* (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002). But, "'[a]lthough the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims.'" *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998) (quoting *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988)); *see also Phillips*, 415 F.3d at 1323. "[I]t is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited." *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed. Cir. 2004).

The prosecution history is another tool to supply the proper context for claim construction because, like the specification, the prosecution history provides evidence of how the U.S. Patent and Trademark Office ("PTO") and the inventor understood the patent. *Phillips*, 415 F.3d at 1317. However, "because the prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Id.* at 1318; *see also Athletic*

*Alternatives, Inc. v. Prince Mfg.*, 73 F.3d 1573, 1580 (Fed. Cir. 1996) (ambiguous prosecution history may be "unhelpful as an interpretive resource").

Although extrinsic evidence can also be useful, it is "'less significant than the intrinsic record in determining the legally operative meaning of claim language.'" *Phillips*, 415 F.3d at 1317 (quoting *C.R. Bard, Inc.*, 388 F.3d at 862). Technical dictionaries and treatises may help a court understand the underlying technology and the manner in which one skilled in the art might use claim terms, but technical dictionaries and treatises may provide definitions that are too broad or may not be indicative of how the term is used in the patent. *Id.* at 1318. Similarly, expert testimony may aid a court in understanding the underlying technology and determining the particular meaning of a term in the pertinent field, but an expert's conclusory, unsupported assertions as to a term's definition are not helpful to a court. *Id.* Extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms." *Id.* The Supreme Court recently explained the role of extrinsic evidence in claim construction:

> In some cases, however, the district court will need to look beyond the patent's intrinsic evidence and to consult extrinsic evidence in order to understand, for example, the background science or the meaning of a term in the relevant art during the relevant time period. *See, e.g., Seymour v. Osborne*, 11 Wall. 516, 546 (1871) (a patent may be "so interspersed with technical terms and terms of art that the testimony of scientific witnesses is indispensable to a correct understanding of its meaning"). In cases where those subsidiary facts are in dispute, courts will need to make subsidiary factual findings about that extrinsic evidence. These are the "evidentiary underpinnings" of claim construction that we discussed in *Markman*, and this subsidiary factfinding must be reviewed for clear error on appeal.

*Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 841 (2015).

## B.      Departing from the Ordinary Meaning of a Claim Term

There are "only two exceptions to [the] general rule" that claim terms are construed according to their plain and ordinary meaning: "1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of the claim term either in the

specification or during prosecution."[1] *Golden Bridge Tech., Inc. v. Apple Inc.*, 758 F.3d 1362, 1365 (Fed. Cir. 2014) (quoting *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012)); *see also GE Lighting Solutions, LLC v. AgiLight, Inc.*, 750 F.3d 1304, 1309 (Fed. Cir. 2014) ("[T]he specification and prosecution history only compel departure from the plain meaning in two instances: lexicography and disavowal."). The standards for finding lexicography or disavowal are "exacting." *GE Lighting Solutions*, 750 F.3d at 1309.

To act as his own lexicographer, the patentee must "clearly set forth a definition of the disputed claim term," and "clearly express an intent to define the term." *Id.* (quoting *Thorner*, 669 F.3d at 1365); *see also Renishaw*, 158 F.3d at 1249. The patentee's lexicography must appear "with reasonable clarity, deliberateness, and precision." *Renishaw*, 158 F.3d at 1249.

To disavow or disclaim the full scope of a claim term, the patentee's statements in the specification or prosecution history must amount to a "clear and unmistakable" surrender. *Cordis Corp. v. Boston Sci. Corp.*, 561 F.3d 1319, 1329 (Fed. Cir. 2009); *see also Thorner*, 669 F.3d at 1366 ("The patentee may demonstrate intent to deviate from the ordinary and accustomed meaning of a claim term by including in the specification expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope."). "Where an applicant's statements are amenable to multiple reasonable interpretations, they cannot be deemed clear and unmistakable." *3M Innovative Props. Co. v. Tredegar Corp.*, 725 F.3d 1315, 1326 (Fed. Cir. 2013).

---

[1] Some cases have characterized other principles of claim construction as "exceptions" to the general rule, such as the statutory requirement that a means-plus-function term is construed to cover the corresponding structure disclosed in the specification. *See, e.g., CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1367 (Fed. Cir. 2002).

### C.    Definiteness Under 35 U.S.C. § 112, ¶ 2 (pre-AIA) / § 112(b) (AIA)[2]

Patent claims must particularly point out and distinctly claim the subject matter regarded as the invention. 35 U.S.C. § 112, ¶ 2. A claim, when viewed in light of the intrinsic evidence, must "inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2129 (2014). If it does not, the claim fails § 112, ¶ 2 and is therefore invalid as indefinite. *Id.* at 2124. Whether a claim is indefinite is determined from the perspective of one of ordinary skill in the art as of the time the application for the patent was filed. *Id.* at 2130. As it is a challenge to the validity of a patent, the failure of any claim in suit to comply with § 112 must be shown by clear and convincing evidence. *Id.* at 2130 n.10. "[I]ndefiniteness is a question of law and in effect part of claim construction." *ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509, 517 (Fed. Cir. 2012).

When a term of degree is used in a claim, "the court must determine whether the patent provides some standard for measuring that degree." *Biosig Instruments, Inc. v. Nautilus, Inc.*, 783 F.3d 1374, 1378 (Fed. Cir. 2015) (quotation marks omitted). Likewise, when a subjective term is used in a claim, "the court must determine whether the patent's specification supplies some standard for measuring the scope of the [term]." *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1351 (Fed. Cir. 2005). The standard "must provide objective boundaries for those of skill in the art." *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1371 (Fed. Cir. 2014).

## III.    AGREED CONSTRUCTIONS

The parties have agreed to the following constructions set forth in their Patent Rule 4-5(d) Joint Claim Construction Chart (Dkt. No. 140).

---

[2] The Court refers to the pre-AIA version of § 112 but understands that there is no substantial difference between definiteness under the pre-AIA version and under the AIA version of the statute.

| Term[3] | Agreed Construction |
|---|---|
| "pump body" <br><br> • '018 Patent Claims 1, 14 | the main part of the pump |
| "ambient" <br><br> • '394 Patent Claims 9, 16 | outside the inflatable body |

Having reviewed the intrinsic and extrinsic evidence of record, the Court agrees with and hereby adopts the parties' agreed constructions.

## IV.    CONSTRUCTION OF DISPUTED TERMS

### A.    "inflatable body"

| Disputed Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "inflatable body" <br><br> • '394 Patent Claims 1, 13, 16 <br> • '018 Patent Claims 1, 14 | a substantially airtight structure that expands when filled with air or other gases | a structure that expands when filled with air or other gases |

### The Parties' Positions

Plaintiff submits: Its proposed construction comports with the patent-applicant's definition and use of the term, the plain meaning of the term as evinced by various dictionaries, and by a sister court's construction of the term in a related patent. Dkt. No. 119 at 19–22. During prosecution of the '018 Patent, the applicant defined "inflatable body" as "a body that is substantially airtight and expands when filled with air or other gas." *Id.* at 20 (quoting '018 File Wrapper November 20, 2006 Reply at 2–3, Dkt. No. 119-7 at 2–3). "Inflatable body" is used in the Asserted Patents consistent with this definition to refer to airbeds or air mattresses that remain inflated during use and are purposefully deflated after use. *Id.* at 20–21. As recognized by a sister

---

[3] For all term charts in this order, the claims in which the term is found are listed with the term but: (1) only the highest-level claim in each dependency chain is listed, and (2) only claims identified in the parties' Patent Rule 4-5(d) Joint Claim Construction Chart (Dkt. No. 140) are listed.

court, this definition comports with the term's plain meaning. *Id.* at 19–20 (citing *Merriam-Webster.com*, "inflatable", Dkt. No. 119-8; *Intex Reccreation Corp. v. Team Worldwide Corp.*, 541 F. Supp. 2d 113, 121 (D.D.C. 2008)). Defendants' proposed construction would encompass bodies that expand when filled with air but do not retain the air, which is improper given the air-mattress context of the Asserted Patents. *Id.* at 21.

In addition to the claims themselves, Plaintiff cites the following intrinsic and extrinsic evidence to support its position: **Intrinsic evidence**: '394 Patent, at [57] Abstract, figs.1A, 4A, 4C, 4F–5A, 7A, col.3 l.15 – col.8 l.22; '018 Patent, at [54] Title, [57] Abstract, figs.1A, 6C, 13A, 13B, col.1 ll.23–31, col.1 ll.35–53, col.2 l.60 – col.7 l.25; '018 Patent File Wrapper November 20, 2006 Reply (Plaintiff's Ex. 6, Dkt. No.119-7). **Extrinsic evidence**: *Merriam-Webster.com*, "inflatable"[4] (Plaintiff's Ex. 7, Dkt. No. 119-8).

Defendants respond: An "inflatable body," as the term is used in the Asserted Patents and under its plain meaning, is not necessarily "substantially airtight." Dkt. No. 133 at 6–13. For example, the '018 Patent describes an airbed that deflates when the air pump is removed, so that airbed is not substantially airtight. *Id.* at 7 (citing '018 Patent col.3 ll.16–18). Indeed, the inflatable bodies recited in the '394 and '018 Patents necessarily have a hole through which the pump provides air to inflate the body, so the body is not substantially airtight. *Id.* at 8–9. As evinced by references in analogous art, "inflatable body" may refer to bodies, including airbeds, that are designed to leak. *Id.* at 10–13 (citing, *inter alia*, U.S. Patent No. 5,794,289). Finally, the meaning of "a substantially airtight structure" is not clear and therefore the phrase should not be used to construe a claim. *Id.* 13–15. It is either an unbounded term of degree, *id.* at 13–14, or it means

---

[4] https://www.merriam-webster.com/dictionary/inflatable

nothing more than "a structure that expands when filled with air," *id.* at 14–15 (citing '018 Patent File Wrapper November 20, 2006 at 5, Dkt. No. 133-12 at 7).

In addition to the claims themselves, Defendants cite the following intrinsic and extrinsic evidence to support their position: **Intrinsic evidence**: '394 Patent, at [57] Abstract, figs.1A, 4A, col.3 l.17; '018 Patent, at [57] Abstract, figs.2, 14, 15, col.1 ll.35–52, col.3 ll.15–21, col.3 ll.58–60, col.5 ll.46–48, col.5 ll.53–58, col.6 l.55 – col.7 l.2; '018 Patent File Wrapper August 22, 2006 Office Action at 2–3 (Defendants' Ex. K, Dkt. No. 133-11 at 4–5), November 20, 2006 Reply at 5 (Defendants' Ex. L, Dkt. No. 133-12 at 7), September 4, 2015 Amendment (Defendants' Ex. A, Dkt. No. 133-1 at 2–8), November 20, 2015 Notice of Allowability (Defendants Ex. A, Dkt. No. 133-1 at 10); U.S. Patent No. 5,794,289 (Defendants' Ex. B, Dkt. No. 133-2); U.S. Patent No. 5,068,933 (Defendants' Ex. J, Dkt. No. 133-10). **Extrinsic evidence**: *McGraw-Hill Dictionary of Scientific and Technical Terms* 959 (4th ed. 1989), "inflated" (Defendants' Ex. D, Dkt. No. 133-4 at 5); *The New Shorter Oxford English Dictionary* 1363 (1993), "inflate" (Defendants' Ex. E, Dkt. No. 133-5 at 4); *Merriam-Webster.com*, "inflatable"[5] (Plaintiff's Ex. 7, Dkt. No. 119–8); U.S. Patent No. 6,698,046 (Defendants' Ex. C, Dkt. No. 133-3); U.S. Patent No. 3,653,083 (Defendants' Ex. F, Dkt. No. 133-6); U.S. Patent No. 4,197,837 (Defendants' Ex. G, Dkt. No. 133-7); U.S. Patent No. 5,564,963 (Defendants Ex. H, DKT. NO. 133-8); U.S. Patent No. 4,225,989 (Defendants' Ex. I, Dkt. No. 133-9).

Plaintiff replies: The applicant's prosecution-history definition of "inflatable body" governs. Dkt. No. 134 at 4–5. This definition is not ambiguous despite its inclusion of "substantially airtight." Rather, "substantially airtight" properly conveys that although designed to

---

[5] https://www.merriam-webster.com/dictionary/inflatable

be airtight, the inflatable body of the Asserted Patents will, like all inflated plastic bodies, experience some leakage. *Id.* at 5–6.

### Analysis

There are two issues in dispute. First, whether the patentee defined "inflatable body" in part by requiring the body be substantially airtight. Second, whether inclusion of "substantially airtight" in the construction of the term renders the term ambiguous. The Court holds that "inflatable body" was defined during prosecution, that definition governs, and Defendants have failed to establish that any claim is rendered indefinite by that definition despite the definition's inclusion of "substantially airtight."

During prosecution of the '018 Patent, the applicant explicitly explained the meaning of "inflatable body" as the term is used in the patent:

> Although the term "inflatable body" is not expressly defined in the specification, it is clearly used in its ordinary and customary sense, i.e., a body that is substantially airtight and expands when filled with air or other gas. … The embodiments in the specification are airbeds, and these are without question the characteristics of airbeds. This definition is also wholly consistent with and supported by the way in which the term "inflatable" is defined in the *American Heritage Dictionary of the English Language*, *4ᵗʰ Edition*, namely, **"[d]esigned to be filled with air or gas before use: an *inflatable mattress*.**" The term "inflate" is defined as "[t]o fill (something) with air or gas so as to make it swell."[1] The term "body" is defined as "[a] mass of matter that is distinct from other masses: *a body of water; a celestial body*." It is also defined as "[t]he main or central part." A characteristic of an inflatable mattress that swells when filled with air or other gas is that it must be substantially airtight. This definition comports with the use of the term "airbed" throughout the specification. **Thus, when given its plain meaning, the claim term "inflatable body" refers to a substantially airtight structure that expands (or swells) when filled with air or other gas**. **Stated differently, the structure of an "inflatable body" must be substantially airtight and expand when filled with air or other gas**.…
>
> [1] Also see *Random House Webster's Unabridged Dictionary, Second Edition*, inflatable: "capable of being inflated; **designed or built to be inflated before use**"; inflate: "to cause to expand or distend with air or gas."

'018 File Wrapper November 20, 2006 Reply at 2–3 (bold emphasis added), Dkt. No. 133-12 at 4–5. The applicant's explanation is definitional: an "inflatable body" is "a substantially airtight structure that expands (or swells) when filled with air or other gas." The applicant's definition governs.

The inclusion of "substantially airtight" in the construction does not render the meaning of the term less than reasonably certain. First, the patentee explains the operational steps and features to prevent the airbed from leaking after filling it with air. *See, e.g.*, '018 Patent col.3 ll.15–16 ("The O-ring 242 in the socket 24 prevents the airbed from leaking."), col.4 ll.46–47 ("After the airbed 80 is filled with air, the user closes the nozzle with the cover 85 to prevent the airbed from leaking."). The disclosed technological purpose (use as an airbed) constrains "substantially airtight." *See Ortho-McNeil Pharm., Inc. v. Caraco Pharm. Labs., Ltd.*, 476 F.3d 1321, 1326–27 (Fed. Cir. 2007) (noting that a term of degree may be understood with reference to the technology). Second, the applicant did not equate "substantially airtight" with a structure that expands when being filled with air. Rather, the applicant explained that a body that is not substantially airtight will not expand when filled, it would "communicate[] with the ambient"—it would leak. '018 File Wrapper November 20, 2006 Reply at 5, Dkt. No. 133-12 at 7. As explained by the applicant, a body is "inflatable" when it is "designed to be filled with air or gas before use" or "designed or built to be inflated before use," like an air mattress. *Id.* at 2–3, Dkt. No. 133-12 at 4–5. This suggests that the use of the body requires the body to first be inflated and that a body is substantially airtight if it is designed to retain the air (or other gas) used to inflate it. Defendants have failed to carry their burden to establish that "substantially airtight" in the applicant's definition renders any claim indefinite.

Accordingly, the Court construes "inflatable body" as follows:

- "inflatable body" means "substantially airtight structure that expands when filled with air or other gases."

### B. "pipe"

| Disputed Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "pipe"<br><br>• '394 Patent Claims 4, 13, 19 | plain and ordinary meaning | a hollow body for conveying air or other gases |

### The Parties' Positions

Plaintiff submits: "Pipe" is used in the Asserted Patents according to its plain and readily accessible meaning. Dkt. No. 119 at 24–25. There is nothing in the intrinsic record that suggests a different meaning. *Id.*

In addition to the claims themselves, Plaintiff cites the following intrinsic and extrinsic evidence to support its position: **Intrinsic evidence**: '394 Patent, at [57] Abstract, figs.2A–2C, 3A–3D, 5A, col.3 l.46 – col.4 l.38, col.5 ll.48–64, col.8 ll.14–22. **Extrinsic evidence**: *Merriam-Webster.com*, "pipe"[6] (Plaintiff's Ex. 8, Dkt. No. 119-9 at 1); *McGraw-Hill Dictionary of Mechanical and Design Engineering* 251 (3d ed. 1984), "pipe" (Defendants' Ex. M, Dkt. No. 133-13 at 4).[7]

Defendants respond: In the Asserted Patents, a "pipe" is a hollow body that conveys air but is not limited to a specific structure or shape. Dkt. No. 133 at 16–19. Specifically, the "pipe" of the patents is not necessarily a "long tube or hollow body." *Id.*

In addition to the claims themselves, Defendants cite the following intrinsic and extrinsic evidence to support their position: **Intrinsic evidence**: '394 Patent figs.2A–2C, 3A, col.3 ll.46–

---

[6] https://www.merriam-webster.com/dictionary/pipe
[7] Plaintiff cites the dictionary definitions provided in the parties' Patent Rule 4-3 Joint Claim Construction and Pre-Hearing Statement, Dkt. No. 83-1 at 4.

57, col.3 ll.61–67, col.4 ll.13–16, col.4 ll.35–38. **Extrinsic evidence**: *Merriam-Webster.com*, "pipe"[8] (Plaintiff's Ex. 8, Dkt. No. 119-9 at 1); *McGraw-Hill Dictionary of Mechanical and Design Engineering* 251 (3d ed. 1984), "pipe" (Defendants' Ex. M, Dkt. No. 133-13 at 4).

Plaintiff replies: Defendants' proposed construction is improperly broad. Dkt. No. 134 at 6–7. Not every hollow body is a pipe. *Id.*

<u>Analysis</u>

The issue in dispute is whether "pipe" in the '394 Patent carries a broader meaning than its ordinary and customary meaning. It does not. A pipe is not simply any hollow body.

"Pipe" is used in the '394 Patent according to the term's ordinary and customary meaning. Specifically, the term refers to tubular bodies. *See, e.g.*, '394 Patent figs.2A–2D, col.3 l.46 – col.4 l.12 (describing a pipe system comprising an assembly of straight tubes used to convey air); figs.3A–3D, col.4 ll.13–38 (describing a pipe comprising a bent tube used to convey air). This usage comports with the dictionary definitions of record. *McGraw-Hill Dictionary of Mechanical and Design Engineering* 251 (3d ed. 1984) ("A tube made of metal, clay, plastic, wood, or concrete and used to conduct a fluid, gas, or finely divided solid."), Dkt. No. 133-13 at 4; *Merriam-Webster.com*, "pipe"[9] ("a long tube or hollow body for conducting a liquid, gas, or finely divided solid or for structural purposes" and "a tubular or cylindrical object, part, or passage"), Dkt. No. 119-9 at 1. Defendants have simply not identified any special usage of "pipe" that warrants straying from its ordinary and customary meaning.

While the plain meaning of "pipe" is apparent in the context of the patent, the Court notes that the dictionaries of record provide diverse definitions of the term. To reduce any residual ambiguity in the meaning of "pipe," the Court adopts the most applicable definition. Given that the claims

---

[8] https://www.merriam-webster.com/dictionary/pipe
[9] https://www.merriam-webster.com/dictionary/pipe

specifically recite the pipe may be used to convey or conduct air, *see, e.g.*, '394 Patent col.8 l.58 ("the air conduit is a pipe"), it would be redundant to include an air-conveyance requirement in the definition of "pipe." Thus, of the dictionary definitions of record, the Court finds that "a tubular or cylindrical object, part, or passage" most accurately captures the use of "pipe" in the patent. *Merriam-Webster.com*, "pipe," Dkt. No. 119-1 at 1.

Accordingly, the Court construes "pipe" as follows:

- "pipe" means "a tubular or cylindrical object, part, or passage."

### C.      "pack"

| Disputed Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "pack"<br><br>• '950 Patent Claim 1 | a self-contained unit that contains the pump components | plain and ordinary meaning |

#### The Parties' Positions

Plaintiff submits: The term "pack" has multiple plain meanings, thus a "plain and ordinary meaning" construction does not suffice. Dkt. No. 119 at 25–27. For example, the plain meaning of "pack," divorced from the context of the Asserted Patents, may connote something that is carried or simply a collection of things tied together. *Id.* In the context of the patents, however, the "pack" refers to the self-contained collection of pump components that is built into the airbed. *Id.* It does not include external components. *Id.* at 26–27.

In addition to the claims themselves, Plaintiff cites the following intrinsic and extrinsic evidence to support its position: **Intrinsic evidence**: '950 Patent, at [57] Abstract, figs.4A-4C, 4F, 7A–7D, 8A–8C, col.1 ll.33–46, col.3 ll.10–15, col.5 ll.1–17, col.6 ll.42–67, col.7 ll.8–25, col.8 ll.45–53. **Extrinsic evidence**: *The New Shorter Oxford English Dictionary* 2065–66 (1993),

"pack" (Defendants' Ex. E, Dkt. No. 133-5 at 7–8); *The American Heritage Dictionary of the English Language* 1261 (4th ed. 2000), "pack" (Defendants' Ex. N, Dkt. No. 133-14 at 5).[10]

Defendants respond: The "pack" of the claims is in large part defined by express limitations in the claims and therefore need not be construed beyond its plain and ordinary meaning. Dkt. No. 133 at 19–20. Plaintiff's proposed construction is improperly narrow as "pack" is used in the '950 Patent to refer to items other than the air pump assembly. *Id.* at 21 (noting the "control packs" described at '950 Patent fig.7A, col.6 ll.44–47). Further, Plaintiff's proposed construction threatens to read out the exemplary embodiments delineating features of the pack as internal and external. *Id.* at 21–23 (noting, inter alia, the delineation between the air intake/outlet features of the pack and various "internal" pack features described at '950 Patent figs.4B-4C, col.5 ll.7–17). That is, the exemplary packs have "external" features. *Id.*

In addition to the claims themselves, Defendants cite the following intrinsic and extrinsic evidence to support their position: **Intrinsic evidence**: '950 Patent figs.4A-4F, 7A–7C, 8A–8C, col.1 ll.34–46, col.5 ll.1–26, col.6 ll.42–67, col.7 ll.8–33. **Extrinsic evidence**: *The New Shorter Oxford English Dictionary* 2065–66 (1993), "pack" (Defendants' Ex. E, Dkt. No. 133-5 at 7–8); *The American Heritage Dictionary of the English Language* 1261 (4th ed. 2000), "pack" (Defendants' Ex. N, Dkt. No. 133-14 at 5); *Dictionary.com*, "pack"[11] (Plaintiff's Ex. 9, Dkt. No. 119-10).

Plaintiff replies: The air intake and outlet features of the pack are expressly recited as part of the pack in Claim 1 of the '950 Patent. Dkt. No. 134 at 7–8. Further, instances of "control pack" used to describe features of the exemplary embodiments other than the air pump assembly is

---

[10] Plaintiff cites the dictionary definitions provided in the parties' Patent Rule 4-3 Joint Claim Construction and Pre-Hearing Statement, Dkt. No. 83-1 at 5.
[11] http://www.dictionary.com/browse/pack

irrelevant to the construction of the "pack" of the claims that is proposed for construction. *Id.* at 8. The claims explicitly require that a fan and motor are disposed inside the pack. *Id.*

**<u>Analysis</u>**

The issue in dispute is whether "pack" is used in the '950 Patent to specially denote "a self-contained unit that contains the pump components." It is not.

The Court agrees with Defendants that "pack" is predominantly defined by the claim language itself. Indeed, Claim 1 of the '950 Patent provides significant detail on the "pack":

> 1. An inflatable product, including:
> a first chamber comprising a chamber wall;
> ***a pack having*** an <u>interior region</u>, an <u>air intake communicating the interior region to the outside of the first chamber</u> and <u>a first air outlet communicating the interior region to the inside of the first chamber</u>, wherein the pack is built in the chamber wall and extends into an interior of the first chamber;
> a first valve for opening and closing the first air outlet, wherein the first valve is connected to the pack; and
> a <u>fan and motor disposed in the interior region</u> ***of the pack***, wherein, on activation of the fan and motor to inflate the first chamber, air is pumped from outside of the first chamber through the air intake into the interior region of the pack, then through the first valve and first air outlet into the first chamber.

'950 Patent col.8 l.55 – col.9 l.3 (emphasis added). Claim 2 provides more detail: "the pack further having a second air outlet." *Id.* at col.9 ll.5–6. Claim 13 provides "the pack comprises a pack wall exposed to the outside of the first chamber, and the air intake communicates the outside of the first chamber to the interior region of the pack through the pack wall." *Id.* at col.10 ll.21–24. *See also*, '950 Patent col.5 ll.1–26 (describing a "pack" as having a "wall" and an "interior region" and with "a fan and motor … received in the pack"). There is nothing to suggest that the pack is specially defined as "a self-contained unit." A "self-contained unit" suggests that the pack inherently includes all the necessary components. If this were true, however, there would be no need to recite components such as the air intake and air outlet. Nor would there be a need to separately recite the "fan and motor disposed in the … pack" if "pack" necessarily includes the pump components.

Rather, "pack" refers to a container with features and contents as recited in the claims: it has an interior region, an air intake, an air outlet, and a fan and motor are disposed within the pack. Simply, the pack is the container recited in the claims.

Accordingly, the Court construes "pack" as follows:

- "pack" means "container."

### D. "built in," "built into," and "permanently held"

| Disputed Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "built in"<br><br>• '950 Patent Claim 1<br><br>"built into"<br><br>• '394 Patent Claims 1, 13, 16<br>• '018 Patent Claims 1, 14 | plain and ordinary meaning | integral and not removable |
| "permanently held"<br><br>• '018 Patent Claim 1 | plain and ordinary meaning | not removable |
| "wherein the pump body is built into the exterior wall … and wherein the pump body is permanently held by the inflatable body"<br><br>• '018 Patent Claim 1 | not indefinite | indefinite |

**The Parties' Positions**

Plaintiff submits: These terms are used in the Asserted Patents, and in their prosecution histories, according to their plain meanings and the meanings are readily accessible to the jury without construction. Dkt. No. 119 at 22–24, 28. The terms "integral" and "not removable" do not appear in the patent, are less accessible than the issued claim language, and threaten to improperly alter claim scope. *Id.* Specifically, "not removable" suggests a permanence not supported by the

description of the preferred embodiments—which include airbeds with plastic walls which can be readily cut to remove a feature "built into" or "permanently held" by the wall. *Id.* at 23–24, 28.

In addition to the claims themselves, Plaintiff cites the following **intrinsic evidence** to support its position: '394 Patent, at [57] Abstract, fig.4A, col.1 ll.25–28, col.4 ll.39–45, col.8 ll.14–22; '950 Patent, at [57] Abstract, fig.4A, col.1 ll.24–27, col.5 ll.1–6, col.8 ll.45–53; '018 Patent, at [57] Abstract, figs.2, 4, 8A, 9A, 13A–13B, 15, col.1 ll.37–40, col.2 ll.62–64, col.3 ll.22–25, col.4 ll.14–16, col.5 ll.8–11, col.7 ll.3–7, col.7 ll.18–25; '018 Patent File Wrapper July 1, 2008 Response (Plaintiff's Ex. 5, Dkt. No. 119-6 at 1–3), October 30, 2009 Appeal Brief (Plaintiff's Ex. 5, Dkt. No. 119-6 at 4–8); March 2, 2010 Reply (Plaintiff's Ex. 5, Dkt. No. 119-6 at 9–16).

Defendants respond: The terms "built in" and "permanently" are used in the Asserted Patents to denote connections between features that are not temporary; that is, a feature is "built in" or "permanently" connected to another feature if it is not detachable. Dkt. No. 133 at 24–27 (citing '018 Patent col.2 ll.62–64, col.3 ll.11–13. col.3 ll.16–18). This is how the applicant distinguished prior art in prosecuting the '018 Patent, explaining that a "removable," "non-integral" pump that is "temporarily connected" to the inflatable body is not "built into" the inflatable body. *Id.* at 25–27 (citing '018 Patent File Wrapper March 2, 2010 Reply at 18, 21–22, Dkt. No. 133-16 at 19, 22–23). Further, Claim 1 of the '018 Patent is indefinite because two recited limitations are not distinct, and redundancy of claim limitations is fatal to the claim. *Id.* at 28–29 (citing *Skyhook Wireless, Inc. v. Google, Inc.*, No. 10-11571-RWZ, 2012 U.S. Dist. LEXIS 131403, at *38 (D. Mass. Sep. 14, 2012)). Specifically, "the pump body is built into the exterior wall" and "the pump body is permanently held by the inflatable body" each identically require that the pump body is not removable from the inflatable body, so one of the terms is improperly superfluous and it therefore renders the meaning of the claim uncertain. *Id.*

In addition to the claims themselves, Defendants cite the following **intrinsic evidence** to support their position:'018 Patent figs.8–15, col.2 ll.62–64, col.3 ll.11–13, col.3 ll.16–18, col.3 ll.24–25, col.4 l.16, col.5 l.10, col.7 ll.3–7; '018 Patent File Wrapper October 30, 2009 Appeal Brief at 20, 22 (Defendants' Ex. Q, Dkt. No. 133-17 at 21, 23), March 2, 2010 Reply at 18, 21–22 (Defendants' Ex. P, Dkt. No. 133-16 at 19, 22–23); U.S. Patent No. 6,237,653 (Defendants' Ex. O, Dkt. No. 133-15).

Plaintiff replies: During prosecution, the applicant distinguished something that is "built in" from something that is readily removed, analogizing the detachable pump of the prior art with a gas pump and noting that a gas pump is not "built in" a car when temporarily connected to the car when refueling. Dkt. No. 134 at 9. Defendants' proposed "not removable" suggests something more. *Id.* at 9–10. In Claim 1 of the '018 Patent, the "built into" limitation relates to the placement of the pump in the exterior wall—the pump body is built into the wall—and the "permanently held" limitation relates to the attachment of the pump to the inflatable body as a whole—the pump body is permanently held by the inflatable body. *Id.* at 10–11. Thus, the terms are not redundant. Further, even if the terms expressed similar concepts, that does not render the claim indefinite as "it is not unknown for different words to be used to express similar concepts." *Id.* at 11 (quoting *Bancorp Servs., L.L.C. v. Hartford Life Ins. Co.*, 359 F.3d 1367, 1373–74 (Fed. Cir. 2004))

Plaintiff cites further **intrinsic evidence** to support its position:'018 Patent File Wrapper July 1, 2008 Response (Plaintiff's Ex. A, Dkt. No. 134-2), October 30, 2009 Appeal Brief at 20, 22 (Defendants' Ex. Q, Dkt. No. 133-17 at 21, 23), July 27, 2012 Examiner's Answer (Plaintiff's Ex. B, Dkt. No. 134-3), May 8, 2015 Decision on Appeal (Plaintiff's Ex. C, Dkt. No. 134-4).

**Analysis**

There are three main issues in dispute. First, whether a pump that is "built in" or "built into" an inflatable body or the wall of the body is necessarily "not removable" from the body or wall. Second, whether "permanently held" is strictly synonymous with "not removable." Third, whether "pump body built into the exterior wall [of the inflatable body]" and "pump body is permanently held by the inflatable body" are redundant limitations and thereby render Claim 1 of the '018 Patent indefinite. With respect to the first issue, the Court rejects Defendants' "not removable" limitation. With respect to the second issue, the terms are not strictly synonymous. With respect to the third issue, Defendants have not established that Claim 1 of the '018 Patent is invalid because of redundant limitations.

The terms "built in" and "built into" are used in the Asserted Patents according to their plain and ordinary meanings—to denote that a feature "built into" an object is integrated into the object as expressed in the '018 Patent, there is a distinction between something that is "built in" and something that is detachable. For example, the patent provides the following with reference to Figure 2 (reproduced here): "Referring to FIG. 2, an airbed 26 of a first embodiment of the present invention is provided with a detachable electric pump 20, a built-in battery case 22 and a built-in socket 24." '018 Patent col.2 ll.62–63. Figure 2 depicts the case 22 and socket 24 as integrated into the airbed 26 and the pump 20 as separate and distinct from the airbed. Similarly, the applicant explained



FIG. 2

during the course of prosecution that a "separate, distinct, non-integral" pump that is only temporarily attached to the inflatable body is not "built into" the wall of the inflatable body. '018 File Wrapper March 2, 2010 Reply at 18, 21, Dkt. No. 133-16 at 19, 22. This comports with the plain meaning of "built in" and "built into"; namely, integrated into and not detachable from.

A feature is "built into" or "built in" an object if the feature is not readily removed without changing its character. It is not clear whether Defendants use "not removable" synonymously with "not detachable." It is, however, clear from the prosecution history that the applicant's use of "remove" and its variants is synonymous with "detach." *See id.* Based on the use of "detachable" in the '018 Patent, the Court understands "detachable" to mean readily detached. For example, with reference to the operation of the detachable pump shown in Figure 2, the '018 Patent provides:

> In operation, batteries are loaded into the battery case 22. The electric pump 20 is fitted into the socket 24 and then rotated so that the electrode 202 of the electric pump 20 physically contacts the electrode 242 of the socket 24. Then, the electric pump 20 is actuated to pump outside air into the airbed 26 as shown in FIG. 3A. The O-ring 242 in the socket 24 prevents the airbed 26 from leaking. In deflating operation, the user detaches the electric pump 20 from the socket 24 to deflate the airbed 26, as shown in FIG. 3B.

'018 Patent col.2 l.62 – col.3 l.18. Attaching and detaching the pump is a straightforward operation of the airbed that may be performed repeatedly in ordinary use of the airbed. The pump is detachable because it can be removed without changing the characteristics of the pump or the airbed. To the extent that Defendants contend "built in" and "built into" require something more than integrated and not detachable, the Court rejects Defendants proposed construction.

The term "permanently held," while necessarily including a non-detachable connotation, is not strictly synonymous with non-detachable. For example, "held" suggests more than "attached" (and therefore more than "not detachable"). It suggests a level of a support or fixation that "attached" does not. *See, e.g.*, *Dictionary.com*, "hold" ("keep fast," "grasp," and "to bear, sustain,

or support").[12] Likewise, "permanently" held suggests something more lasting than simply not detachable, such as glued or welded versus screwed or bolted. Thus, while a pump "permanently held by the inflatable body" is necessarily not detachable from the body, a pump that is not detachable is not necessarily permanently held. The Court therefore rejects Defendants' proposed construction.

The Court agrees with Plaintiff that there is a distinction between "wherein the pump body is built into the exterior wall" and "wherein the pump body is permanently held by the inflatable body." As just explained, "permanently held" connotes something other than integrated and not detachable.[13]

Accordingly, the Court holds that Defendants have not proven Claim 1 of the '018 Patent is indefinite. The Court further rejects Defendants' proposed constructions, and determines that "built in," "built into," and "permanently held" each has its plain and ordinary meaning and need not be further construed.

---

[12] http://www.dictionary.com/browse/hold

[13] The Court disagrees that redundancy of limitations in a claim necessarily renders the claim invalid. For example, the Federal Circuit has held that "[a] 'whereby' clause that merely states the result of the limitations in the claim *adds nothing to the patentability or substance* of the claim." *Tex. Instruments Inc. v. U.S. Int'l Trade Comm'n*, 988 F.2d 1165, 1172 (Fed. Cir. 1993) (emphasis added). That is, such a limitation is redundant but instead of the redundancy resulting in an invalid claim, the redundant limitation has no effect on patentability precisely because it is redundant. Similarly, in the context of determining whether a limitation recited in a dependent claim is merely redundant of a limitation found in an independent claim, the Federal Circuit has noted: "Claim differentiation is a guide, not a rigid rule. If a claim will bear only one interpretation, *similarity will have to be tolerated*." *ICU Med., Inc. v. Alaris Med. Sys.*, 558 F.3d 1368, 1376 (Fed. Cir. 2009) (quoting *Autogiro Co. of Am. v. United States*, 384 F.2d 391, 404 (Ct. Cl. 1967)) (emphasis added). Taken in this light, the Federal Circuit's canon that claims should be construed "with an eye toward giving effect to all of their terms," *Haemonetics Corp. v. Baxter Healthcare Corp.*, 607 F.3d 776, 781 (Fed. Cir. 2010), should not be taken as a hard and fast rule that will render claims indefinite if necessarily violated. Rather, if there is only one reasonable interpretation of a claim then the meaning of the claim is reasonably certain, even with redundant terms. *See Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2129 (2014) (35 U.S.C. § 112, ¶ 2 requires that the claims "inform those skilled in the art about the scope of the invention *with reasonable certainty*" (emphasis added)).

**E. The dependent claims purportedly indefinite under 35 U.S.C. § 112, ¶ 4.**

| Disputed Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "The inflatable product as claimed in claim 1, wherein air flows from the interior region of the housing into the inflatable body when the air conduit is in the first position."<br><br>• '394 Patent Claim 2 | not indefinite | indefinite |
| "The inflatable product as claimed in claim 1, wherein air flows from the inflatable body into the interior region of the housing when the air conduit is moved to the second position."<br><br>• '394 Patent Claim 3 | not indefinite | indefinite |
| "The inflatable product as claimed in claim 1, wherein the air conduit is arranged to convey air pumped by the fan 55 and motor assembly."<br><br>• '394 Patent Claim 7 | not indefinite | indefinite |
| "The inflatable product as claimed in claim 16, wherein air flows from the interior region of the housing into the inflatable body when the air conduit is in the first position."<br><br>• '394 Patent Claim 17 | not indefinite | indefinite |

| Disputed Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "The inflatable product as claimed in claim 16, wherein air flows from the inflatable body into the interior region of the housing when the air conduit is moved to the second position."<br><br>• '394 Patent Claim 18 | not indefinite | indefinite |
| "The inflatable product as claimed in claim 1, wherein the pump body is located in the inflatable body."<br><br>• '018 Patent Claim 12 | not indefinite | indefinite |

Because the parties' arguments and proposed constructions with respect to these terms are related, the Court addresses the terms together.

### The Parties' Positions

Plaintiff submits: Defendants' indefiniteness position is not based on any purported lack of meaning of the claims and Court should therefore find the claims are not indefinite or decline to rule on Defendants' indefiniteness contentions at the claim-construction stage. Dkt. No. 119 at 29–34.

Defendants respond: These claims are invalid under 35 U.S.C. § 112, ¶ 4 because they depend from other claims but do not "***specify a further limitation of the subject matter claimed***" in those other claims. Dkt. No. 133 at 32 (quoting 35 U.S.C. § 112, ¶ 4 (Defendants' emphasis) and citing *Pfizer Inc. v. Ranbaxy Labs.*, 457 F.3d 1284, 1291 (Fed. Cir. 2006)).

Plaintiff replies: The challenged claims provide further limitations to the claims from which they depend and therefore comply with § 112, ¶ 4. Dkt. No. 134 at 12–13. Specifically Claims 2, 3, 7, 17, and 18 of the '394 Patent include limitations regarding the direction and path of air flow

not found in Claims 1 and 16. *Id.* at 13. Claim 12 of the '018 Patent requires that the pump body be "located in" the inflatable body, which is a distinct concept from Claim 1's requirements that the pump body be "built into" an exterior wall of the body and that it be "permanently held" by the inflatable body. *Id.* at 12 –13. These differences in claim scope, however slight, are sufficient to satisfy § 112, ¶ 4. *Id.* (citing *Traxxas LP v. Hobby Prods. Int'l*, No. 2:14-CV-945-JRG-RSP, 2015 U.S. Dist. LEXIS 114148, at *49–58 (E.D. Tex. Aug. 27, 2015)).

Plaintiff cites further **extrinsic evidence** to support its position: *Dictionary.com*, "hold."[14]

## **Analysis**

The issue here is whether the challenged dependent claims are invalid for failing to specify further limitations over the claims from which they depend. Defendants have failed to establish that any claim is invalid under 35 U.S.C. § 112, ¶ 4.

Defendants have the burden of invalidating a presumptively valid patent under 35 U.S.C. § 112, ¶ 4. The Federal Circuit has instructed that challenges under § 112, ¶ 4 are to be treated like challenges under any of the § 112 provisions. *Pfizer Inc. v. Ranbaxy Labs.*, 457 F.3d 1284, 1291– 92 (Fed. Cir. 2006). Thus, Defendants have the burden of establishing that the dependent claims fail to satisfy § 112, ¶ 4. *See Nautilus Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2130 n.10 (2014). Here, they have failed to do so.

On the record before the Court, it is not clear to the Court that independent Claims 1 and 16 of the '394 Patent mandate the paths of air flows expressly recited in dependent Claims 2, 3, 7, 17, and 18. Defendants' contentions inherently involve constructions of Claims 1 and 16 with regard to the paths of air flows. The parties did not, however, present such to the Court for claim construction. *See* Patent Rule 4-5(d) Joint Claim Construction Chart Ex. A at 7–9, Dkt. No. 141-1

---

[14] http://www.dictionary.com/browse/hold

at 8–9; Patent Rule 4-3 Joint Claim Construction and Pre-Hearing Statement Ex. A at 8–9, Dkt. No. 83-1 at 8–9. On this record, Plaintiff's contentions regarding differences in scope between Claims 1 and 16 of the '394 Patent and their dependent claims are reasonable.

Similarly, it is not clear to the Court that '018 Patent Claim 1's limitation of the pump body be "built into" the exterior wall of a inflatable body, mandate that the pump body be "located in" the inflatable body, as recited in dependent Claim 12. Again, Defendants' contentions inherently involve claim-construction issues not presented to the Court. *See* Patent Rule 4-5(d) Joint Claim Construction Chart Ex. A at 7–9, Dkt. No. 141-1 at 8–9; Patent Rule 4-3 Joint Claim Construction and Pre-Hearing Statement Ex. A at 8–9, Dkt. No. 83-1 at 8–9. On this record, Plaintiff's contentions regarding differences in scope between Claims 1 and 12 of the '018 Patent are reasonable.

Accordingly, the Court holds that Defendants have failed to establish that any claim is invalid under 35 U.S.C. § 112, ¶ 4.

## V.    CONCLUSION

The Court holds that Defendants have not established that any claim is indefinite and adopts the constructions set forth above, as summarized in the following table. The parties are **ORDERED** that they may not refer, directly or indirectly, to each other's claim-construction positions in the presence of the jury. Likewise, the parties are **ORDERED** to refrain from mentioning any portion of this opinion, other than the actual definitions adopted by the Court, in the presence of the jury. Any reference to claim-construction proceedings is limited to informing the jury of the definitions adopted by the Court.

Within thirty (30) days of the issuance of this Memorandum Opinion and Order, the parties are hereby **ORDERED**, in good faith, to mediate this case with the mediator agreed upon by the

parties. As a part of such mediation, each party shall appear by counsel and by at least one corporate officer possessing sufficient authority and control to unilaterally make binding decisions for the corporation adequate to address any good faith offer or counteroffer of settlement that might arise during such mediation. Failure to do so shall be deemed by the Court as a failure to mediate in good faith and may subject that party to such sanctions as the Court deems appropriate.

| Term | Construction |
|------|--------------|
| "pump body" | the main part of the pump |
| "ambient" | outside the inflatable body |
| "inflatable body" | substantially airtight structure that expands when filled with air or other gases |
| "pipe" | a tubular or cylindrical object, part, or passage |
| "pack" | container |
| "built in" / "built in" | plain and ordinary meaning |
| "permanently held" | plain and ordinary meaning |

**So Ordered this**
**Mar 15, 2018**

_____
RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE