# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| TEAM WORLDWIDE CORPORATION, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:17-CV-00235-JRG |
| | § | |
| WAL-MART STORES, INC., ET. AL | § | |
| | § | |
| *Defendants*. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are the following Motions:

(1) Walmart's[1] Motion to Supplement Invalidity Contentions (Dkt. No. 127);

(2) Intervenor-Defendants Intex Recreation Corp. and Intex Trading Ltd. (collectively, "Intex"), the Coleman Company, Inc. ("Coleman"), and Bestway (USA), Inc.'s ("Bestway") (collectively, "the Intervenor-Defendants") Motion to Amend/Correct the Docket Control Order to Provide for Intervenor Defendants' Service of Invalidity Contentions (Dkt. No. 125);

(3) Plaintiff Team World Wide Corporation's ("TWW" or "Plaintiff") Motion to Compel (Dkt. No. 204); and

(4) TWW's Motion for Leave to Amend Infringement Contentions (Dkt. No. 209).

On June 1, 2018, the Court heard argument on Walmart's Motion to Supplement Invalidity Contentions (Dkt. No. 225), and, on June 27, 2018, the Court heard argument on the remainder of the above-listed Motions. (Dkt. No. 253). Having considered the Motions, the Parties' argument, and the relevant authorities, the Court now addresses each motion as set forth below.

---

[1] Walmart Inc., Wal-Mart Stores Texas, LLC, Wal-Mart.com USA LLC, Sam's West, Inc. d/b/a Sam's Club (collectively, "Walmart" or "the Walmart Defendants").

I. **BACKGROUND**

On March 29, 2017, TWW filed suit against Walmart alleging infringement of U.S. Pat. Nos. 9,211,018 ("the '018 Patent"), 7,346,950 ("the '950 Patent"), and 7,246,394 ("the '394 Patent") (collectively, "the Asserted Patents"). "In general, the Asserted Patents are directed to technology for inflatable products (e.g., air mattresses) with built-in air pumps." (Dkt. No. 153 at 3.) Walmart filed its Answer on June 5, 2017. (Dkt. No. 16.)

On July 21, 2017, in accordance with the deadlines set forth by this Court, TWW served its initial Infringement Contentions on Walmart. (Dkt. No. 21.)

On August 2, 2017, Intex sought this Court's permission to intervene pursuant to Fed. R. Civ. P. 24. (Dkt. No. 29.) One day later, Coleman sought this Court's permission to intervene. (Dkt. No. 35.) On October 5, 2017, Bestway also sought this Court's permission to intervene. (Dkt. No. 64.)

On October 16, 2017, Walmart served Invalidity Contentions on TWW in accordance with the deadlines set forth by the Court. (*See* Dkt. No. 125 at 1.)

On December 7, 2017, the Court allowed Intex, Coleman, and Bestway to intervene pursuant to Federal Rule of Civil Procedure 24. (Dkt. No. 84.)

On January 24, 2018, Walmart filed its Motion to Supplement Invalidity Contentions (Dkt. No. 127) and the Intervenor-Defendants filed their Motion to Amend/Correct the Docket Control Order to Provide for Intervenor Defendants' Service of Invalidity Contentions. (Dkt. No. 125.)

The Court held a Claim Construction Hearing on February 27, 2018 and, shortly thereafter, issued its Claim Construction Memorandum Opinion and Order. (Dkt. No. 153.)

TWW filed its Motion to Compel (Dkt. No. 204) on May 18, 2018 and its Motion for Leave to Amend Infringement Contentions on May 25, 2018. (Dkt. No. 209).

II. DISCUSSION

    a. **Walmart's Motion to Supplement Invalidity Contentions (Dkt. No. 127) and Intervenor-Defendants' Motion to Amend/Correct the Docket Control Order to Provide for Intervenor Defendants' Service of Invalidity Contentions (Dkt. No. 125)**

Although filed by different parties and styled differently, as a practical matter, these Motions seek the same relief—i.e., leave to supplement the current, operative invalidity contentions that will guide and bind Walmart and the Intervenor-Defendants' invalidity positions during the remainder of this case. (*See generally* Dkt. Nos. 125, 127.) However, each Motion provides a procedurally different vehicle to achieve this common relief. The Intervenor-Defendants move for an amendment to the Docket Control Order to provide a deadline for Intervenor Defendants to serve their Invalidity Contentions. (Dkt. No. 125.) However, "[t]o the extent the original October 16, 2017 invalidity contention deadline was intended to apply to the Intervenor Defendants, the Intervenor Defendants respectfully move the Court for an extension of that deadline to include the contentions served by the Intervenor-Defendants on January 22, 2018." (*Id.*) At the same time, Walmart moves for leave to supplement its original Invalidity Contentions pursuant to Patent Rule 3-6(b). (Dkt. No. 127.) Walmart submits that, in the course of defending against Plaintiff's infringement allegations, it has identified sixteen "new"[2] prior art references

---

[2] Walmart request leave to supplement its contentions with 11 new prior art references and 5 references already known to Walmart. (Dkt. No. 127 at 9–11.)

3

with which it seeks to supplement its contentions, including "three new claim charts for one of the asserted patents, two new claim charts for another asserted patent, and two new claim charts for the third asserted patent."[3] (*Id.* at 1.) Walmart also seeks to make minor amendments to its existing claim charts to add new secondary references to its obviousness combinations. (*Id.*)

Were either of these Motions to be granted in its entirety, it would in effect allow both Walmart and the Intervenor-Defendants to present the same invalidity case at trial. Perhaps for this reason, it appears as if Walmart and the Intervenor-Defendants present these Motions in a Plan A-Plan B fashion. Curiously, Walmart (and the Intervenor-Defendants) all but admit this is true:

> To be clear, because Walmart is the only defendant that has served invalidity contentions in this case pursuant to the October 16, 2017 deadline as set forth in the DCO, Walmart requests the relief sought herein. However, references to "Walmart" from this point forward in this Motion should be understood to be a reference to Walmart and the Intervenor[-]Defendants indemnifying Walmart in this case. The Intervenor[-]Defendants participated in investigating the prior art and Walmart worked with the Intervenor[-]Defendants to prepare the supplemental contentions that are the subject of this Motion. Further, as set forth in the recently filed Opposed Motion to Amend the DCO Intervenor[-]Defendants, by their own motion, seek an amendment to the DCO to permit them to rely on invalidity contentions they served on January 22, 2018. Notably, Intervenor[-]Defendants served these contentions on January 22, 2018 before their default P.R. 3-3 deadline (which is February 12, 2018, given that Plaintiff served infringement contentions on the Intervenor[-]Defendants on December 28, 2017). Intervenor[-]Defendants' invalidity contentions are consistent with Walmart's original and supplemental invalidity contentions, as discussed herein. To the extent the Court denies the Intervenor[-]Defendants'

---

[3] Walmart summarizes its proposed supplemental claim charts as follows:

| New Exhibit | Applicable Asserted Patent | Invalidity Position |
|---|---|---|
| Exhibit B12 – Parienti | '394 Patent | § 103 |
| Exhibit B13 – Walker | '394 Patent | § 103 |
| Exhibit B14 – Mogaki | '394 Patent | § 103 |
| Exhibit C8 – Parienti | '950 Patent | §§ 102 and/or 103 |
| Exhibit C9 – Mogaki | '950 Patent | § 103 |
| Exhibit D7 – Parienti | '018 Patent | §§ 102 and/or 103 |
| Exhibit D8 – Goldsmith | '018 Patent | §§ 102 and/or 103 |

(Dkt. No. 127 at 4.)

4

Motion to Amend the DCO, the Intervenor[-]Defendants join Walmart in this Motion.

(Dkt. No. 127 at 1 n.1 (internal citations omitted).) It is clear to the Court that throughout this litigation, Walmart and the Intervenor-Defendants have acted in concerted harmony. For example, on June 1, 2018, counsel for Intex argued both its own Motion and Walmart's Motion, a unique posture upon which the Court felt compelled to remark.[4] Because these Motions were presented in such a manner and because granting one would effectively minimize the need for the other, the Court will consider and resolve them as if filed as a single motion seeking singular relief.

When evaluating a motion for leave to amend a scheduling order or a motion for leave to amend contentions, courts require a showing of "good cause." "A schedule may be modified only for good cause." Fed. R. Civ. P. 16(b)(4). Similarly, Local Patent Rule 3-6(b) allows a party to supplement its infringement or invalidity contentions "only by order of the Court, which shall be entered only upon a showing of good cause." P.R. 3-6(b). In determining whether good cause exists in both circumstances, courts in this district consider: "(1) the explanation for the party's failure to meet the deadline, (2) the importance of what the Court is excluding, (3) the potential prejudice if the Court allows that thing that would be excluded, and (4) the availability of a continuance to cure such prejudice." *Keranos, LLC v. Silicon Storage Tech., Inc.*, 797 F.3d 1025, 1035 (Fed. Cir. 2015) (reviewing Local Patent Rule 3–6(b)); *see also S & W Enters., L.L.C. v.*

---

[4] (Dkt. No. 233, Hr'g Tr. 12:20–13-10 ("THE COURT: Let me stop just a minute, Mr. Carter, and clarify something. You are counsel for Intex; is that correct? MR. CARTER: That is correct. THE COURT: And this is Walmart's motion? MR. CARTER: Yes. THE COURT: But you're going to offer the argument? MR. CARTER: Yes. And so I spoke with Walmart's counsel before. In -- in one of the first two footnotes, it was stated that for the intervenor's motion to amend the scheduling order for the invalidity contentions, that if that was not granted, that in the alternative, the intervenors joined Walmart's motion. THE COURT: I just want to make it clear that the named movant here doesn't have any problem with one of the intervenor's counsel presenting the argument. MR. DODGE: No, Your Honor. Walmart consents to that.")

5

*Southtrust Bank of Ala., NA*, 315 F.3d 533, 535 (5th Cir. 2003) (setting forth the four-factor test binding within the circuit). The Court will consider each of these factors in exercising its discretion on whether to grant the Motions.

      i. <u>Factor 1—The Explanation for the Party's Failure to Meet the Deadline.</u>

Walmart, in explaining its reasons for the delay, asserts that it continued to search for prior art and refine its invalidity arguments after it initially served its Invalidity Contentions, including before and after the October 16 deadline. (Dkt. No. 127 at 8.) According to Walmart, this additional searching was done by counsel for Intex using a software program called PatSnap®, which counsel for Intex had never used before.[5] (*Id*.) Walmart also further analyzed 257 prior art references that were previously disclosed in Exhibit A of its IVCs, but not included in the claim charts of the initial Invalidity Contentions. (*Id*. at 3.) Walmart sent certain identified references and "six of the seven new claim charts to Plaintiff's counsel on December 4, 2017." (*Id*. at 9.) "[O]n December 12, 2017, Walmart sent the last supplemental claim chart . . . and on December 22, Walmart sent additional amendments to the original Invalidity Contentions and the previously disclosed supplemental claim charts based on additional prior art that Walmart either learned of through additional searching or determined was relevant to its defenses." (*Id*.)

Walmart also maintains that, because this field is "a crowded art," it "was not aware of eleven of the sixteen prior art references at issue here before Walmart served its original [Invalidity Contentions]"—i.e., it did not know they existed. (*Id*. at 9, 12.) With regard to the other five references,[6] which were originally included in Exhibit A to Walmart's initial Invalidity

---

[5] The Court notes that, again, it appears Walmart and the Intervenor-Defendants act in concerted harmony.
[6] The five references that Walmart originally included in Exhibit A to its IVCs are the Walker, Grant, Farmer, Miller, and Grad References.

Contentions, Walmart either "did not fully appreciate them" at the time or did not consider them to be strong evidence until after further analysis. (*Id*. at 10–11.)

Walmart argues that it was diligent in identifying the "new" prior art, "diligent in notifying Plaintiff of its proposed supplemental contentions," and "promptly filed the present motion a little over one week after Plaintiff finally advised Walmart that it would oppose this motion." (*Id*. at 12.)

In response, TWW argues that Walmart has no good reason for failing to finish its Invalidity Contentions by the deadline set forth in this case and, thus, has failed to justify its delay. (Dkt. No. 135 at 4.) "First, [Walmart] admits that it knew of, and included references to prior art in its original contentions and opted not to chart them, yet now seeks to add material regarding the old references." (*Id*.) "Second, [Walmart] provides no explanation for why it did not complete its searching sooner to reveal the newly added art." (*Id*.) According to TWW, both of these reasons provide independent bases for denying Walmart's Motion. (*See id*.) TWW also argues that a delay because a field of art is crowded or when using new software does not constitute good cause. (*Id*. at 6.) In sum, "there are no new extenuating circumstances, no new information, [and] no roadblocks to overcome." (*Id*. at 5.)

TWW also argues that Walmart was not diligent. (*Id*. at 7.) "[Walmart] presented these references no sooner than seven weeks after the deadline." (*Id*.) Additionally, TWW argues that Walmart unreasonably delayed in disclosing the amendments to TWW and in filing its motion to amend. (*Id*. at 7–8.)

In their Motion, the Intervenor-Defendants submit that because they were not parties to the case until December 7, 2017, nearly two months after the expiration of the original deadlines to serving invalidity contentions, they could not have served invalidity contentions before that date.

(Dkt. No. 125 at 5.) In addition, the Intervenor-Defendants maintain that they were diligent in their requests to intervene. (*Id.*)

TWW argues in response that the Intervenor-Defendants did not argue this factor properly. (Dkt. No. 136 at 5.) Instead, "they only argue that they were diligent in seeking to intervene. Thus, this entirely fails." (*Id.*)

The Court is persuaded that this factor slightly tips in favor of Walmart and the Intervenor-Defendants. Here, Walmart freely admits that it knew about five of the references at issue here before it served its initial Invalidity Contentions. As to these already known references, Walmart either claims that it "did not fully appreciate" them or, on further review, only now fully understands their relevance or their importance to this case. While that may be true, such is not an adequate excuse and evinces a lack of diligence by Walmart.[7] As to the new references, the Court concludes that Walmart has demonstrated a continued diligence in searching for the new prior art references, in disclosing to TWW its plan to amend its original Invalidity Contentions to include the new references, and in seeking leave to do so.

It is without question the Intervenor-Defendants have been diligent in seeking their relief. The Intervenor-Defendants were only allowed to participate in this litigation on December 7, 2017 when the Court granted their Motions to Intervene. Shortly thereafter, TWW served them with the same Infringement Contentions it served upon Walmart.[8] (Dkt. No. 100.) Less than a month later,

---

[7] Under normal circumstance, allowing supplementation of this kind could encourage parties to simply attach Exhibits to their contentions that list identified prior art references (potentially numbering in the hundreds, if not thousands) and then ask for leave to amend, claiming diligence (and good cause) when an important tactical advantage arises to further expound upon a few of the listed references. The Court warns that this Order does not sanction such a "hide the ball" approach.

[8] There is no question that TWW served the Intervenor-Defendants with the Infringement Contentions. (Dkt. No. 100.)

and although the Court had not set forth a deadline in its Docket Control Order, the Intervenor-Defendants served TWW with their responsive Invalidity Contentions on January 22, 2018 in accordance with the requirements of the Local Patent Rules. A mere three days later, the Intervenor-Defendants sought leave to add a date for service of their Invalidity Contentions to the Docket Control Order. This timeline does not evince a lack of diligence. Furthermore, they were not parties to this case before December 7, 2017 and, thus, did not have standing to ask for relief of this nature prior to that date.

Ultimately, under the unique facts and circumstances of this case, the Court is persuaded that at least a minimal level of diligence has been shown by Walmart and the Intervenor-Defendants. Accordingly, this factor slightly weighs in favor of granting leave.

      ii.   <u>Factor 2—The Importance of What the Court is Excluding.</u>

As to this factor, Walmart argues that "the prior art and arguments sought to be added to the contentions have the potential to render every asserted claim invalid as either anticipated or obvious." (Dkt. No. 127 at 12.) As such, "there should be no dispute about the importance of that art and arguments under this factor." (*Id*.)

In response, TWW argues that "[t]he proposed art is cumulative and not important." (Dkt. No. 135 at 9.) TWW asserts that "in [Walmart's] original contentions, **every single chart** claims that the asserted reference is prior art under at least one subsection of 35 U.S.C. § 102. Having found prior art that allegedly anticipates the asserted patents is nothing new here." (*Id*.)

The Intervenor-Defendants, in their Motion, "adopt the arguments made by the Walmart Defendants in their motion to supplement."[9] (Dkt. No. 125 at 5.) However, "the Intervenor[-]

---

[9] That the Intervenor-Defendants adopted portions of Walmarts' arguments provides yet another reason for addressing

9

Defendants . . . submit that they have an even more acute interest in the supplemental contentions than the Walmart Defendants because the Intervenor[-]Defendants' own products are the ones at issue in this case." (*Id.*)

In response, TWW again asserts that "[the invalidity contentions] are entirely cumulative and not important." (Dkt. No. 136 at 5.) According to TWW, "[t]he Intervenor[-]Defendants lose nothing if they are not permitted to submit their own invalidity contentions." (*Id.*)

The Court finds that this factor is neutral. Indeed, the proposed art may be important to Walmart and the Intervenor-Defendants' invalidity case. This is especially true if they have the potential to render every asserted claim invalid as either anticipated or obvious. However, the Court recognizes that Walmart and the Intervenor-Defendants' invalidity case will not vanish, or even be substantially impacted, if the Court were to deny both of these Motions.

Accordingly, having considered the unique facts and circumstances of this case, the Court finds that this factor neither supports nor weighs against allowing the amendments.

      iii.   <u>Factor 3—The Potential Prejudice if the Court Allows That Thing That Would be Excluded.</u>

As to this factor, Walmart argues that "[t]here is no unfair prejudice to Plaintiff." (Dkt. No. 127 at 14.) According to Walmart, "Plaintiff was put on notice of Walmart's proposed supplemental contentions approximately 7 weeks [before the filing of the motion.]" (*Id.*) Walmart argues that, during that time, Plaintiff presumably reviewed the proposed contentions and could have modified its claim construction positions, but chose not to do so. (*Id.*) This "alone negates a finding of prejudice," according to Walmart. (*Id.*) Further, "Plaintiff has not taken any discovery

---

these Motions as one.

of Walmart or the Intervenor-Defendants, fact discovery in this case will not close until May 14, 2018, and there has not been a claim constructions hearing." (*Id*. (internal citations omitted).)

TWW in response argues that it "will suffer considerable prejudice." (Dkt. No. 135 at 11.) Exemplary of this, "two of the three sought amendments post-date the joint claim construction statement in this case." "Allowing Defendants to amend invalidity contentions so close to the Claim Construing Hearing, and after the parties have largely formulated their respective positions, would force Plaintiff to spend more time and resources in modifying its existing construction." *(Id*. at 12.) This, according to TWW, imposes on it an improper additional burden. (*Id*.)

The Intervenor-Defendants' provide an additional argument that presents the Court with a technical procedural quandary intended to further demonstrate a lack of potential prejudice. On December 28, 2017, after each intervenor filed its Answer-in-Intervention, TWW filed with the Court a Notice of Disclosures, which "notifie[d] the Court that pursuant to Paragraphs 1 and 3 of the Discovery Order, P.R. 3-1, 3-2 and this Court's October 25, 2017 Amended Docket Control Order, [TWW] served its initial and additional disclosures, **amended infringement contentions**, and accompanying and subsequent productions on counsel for Intervenor-Defendants via electronic mail and FTP on December 28, 2017." (Dkt. No. 100 at 1 (emphasis added).) The Intervenor-Defendants argue that, by serving Infringement Contentions on the Intervenor-Defendants, TWW invoked the Local Patent Rules. (Dkt. No. 125 at 5–6.) "Patent Rule 3-3 provides '[n]ot later than 45 days after service upon it of the 'Disclosure of Asserted Claims and Infringement Contentions,' each party opposing a claim of patent infringement, shall serve on all parties its 'Invalidity Contentions'" (*Id*. at 6 (citing P.R. 3-3).) Pursuant to this Rule, the

11

Intervenor-Defendants assert that they would "not be required to serve invalidity Contentions until February 12, 2018." (*Id.*)

TWW responds that "TWW never served [the Intervenor Defendants] with separate invalidity contentions." (Dkt. No. 136 at 1.) Rather, "TWW provided a copy of all of its produced documents to them, including the infringement contentions against Walmart. It did not create separate contentions for Intervenors." (*Id.*) According to TWW, interpreting the Patent Rules in the manner the Intervenor-Defendants suggest creates a loophole in the rules and gives them a second bite at the apple. (*Id.* at 2.) "[I]t is entirely unfair that Intervenor Defendants effectively drafted Wal-Mart's invalidity contentions but have found a way to try to avoid having to show good cause to amend those contentions." (*Id.* at 6.) TWW also argues that allowing this amendment so close to the Claim Construction Hearing (2 months prior) would cause prejudice—i.e., it would force TWW to spend more time and resources in modifying its existing constructions. (*Id.*) In addition, TWW argues that "an intervenor is admitted to the proceeding as it stands" and that such intervenor "must join subject to the proceedings that have occurred prior to his interventions." (Dkt. No. 147 at 4.)

Ultimately, this factor supports the granting of leave. While the Court agrees with TWW that an amendment to the Defendants' invalidity contentions so close to Claim Construction does indeed prejudice TWW, the Court notes that this prejudice could have been avoided and may in fact be self-inflicted. Despite TWW's best characterization of the Notice it filed on December 28, 2017, TWW did represent to the Court that it "served" its amended infringement contentions on counsel for the Intervenor Defendants. (Dkt. No. 100.) TWW also stated that such service was made pursuant to P.R. 3-1 (Disclosure of Asserted Claims and Infringement Contentions). The

Court is not sure how else it can interpret these statements other than that TWW intended to and did invoke the Patent Rules. Such invocation has consequences; it sets the deadline by which parties opposing a claim of patent infringement must serve Invalidity Contentions. Accordingly, the Intervenor-Defendants had until February 12, 2018 to respond with their own Invalidity Contentions. By serving their own Invalidity Contentions on January 22, 2018, the Intervenor-Defendants clearly did not miss this deadline. TWW cannot complain about the prejudicial effect of these "new" invalidity contentions when it is the cause of the effect.

Accordingly, this factor supports granting leave to amend.

        iv.    <u>Factor 4—The Availability of a Continuance to Cure Such Prejudice.</u>

TWW argues that "a continuance here would delay the case and deny TWW the remedy it seeks as a competitor in the marketplace who is losing sales every day due to Defendants' infringement while this case continues." (Dkt. No. 135 at 14.) In response, Walmart asserts these assertions lack factual support. (Dkt. No. 143 at 2.)

At the current stage of the proceedings, the Court finds that this factor is neutral. Even if TWW were to suffer some prejudice, the Court is of the opinion that such prejudice can be addressed before trial.

v.  Conclusion

On balance, the good cause factors justify granting leave to amend the operative Invalidity Contentions in this case and for the amendment of the DCO to allow the Intervenor-Defendants to serve Invalidity Contentions. Accordingly, the court hereby **GRANTS** both Motions (Dkt. Nos. 125 and 127). However, the Court, in an exercise of its discretion, finds it reasonable to hereby **ORDER** that the now operative Amended Invalidity Contentions apply equally to both Walmart and the Intervenor-Defendants as Joint Invalidity Contentions created and served by both Walmart and the Intervenor-Defendants.

b. **Plaintiff's Motion to Compel (Dkt. No. 204)**

On June 27, 2018, the Court heard argument on this Motion and **DENIED** the Motion without prejudice as to any later *Daubert* ruling. (Dkt. No. 253.) This Order memorializes that ruling.

c. **Plaintiff's Motion for Leave to Amend Infringement Contentions (Dkt. No. 209)**

In this Motion, TWW moves for leave to amend its infringement contentions "to include a more specific identification of the infringing products that were already identified in TWW's original and supplemental infringement contentions." (Dkt. No. 209.)[10]

Local Patent Rule 3-6(b) allows a party to supplement its infringement contentions "only by order of the Court, which shall be entered only upon a showing of good cause." P.R. 3-6(b).

---

[10] (*See also* Dkt. No. 259, Hr'g Tr. 14:6-22 ("THE COURT: As I read your motion, you were – and this may not be completely accurate, this characterization, so I want you to comment on it, but it looked like the thrust of your motion was not to raise new theories of infringement but simply to fill out and further clarify the existing theories that are set forth in your existing contentions with additional particular information about the accused products and other related matters. Is that, in your view, a fair characterization, or is it not? MR. HARKINS: I think that's very close, Your Honor, except that we're not filling out additional information. We're literally just changing the product list in the case. We – we're not – we're not making one change to any of the infringement charts in this case. It's literally just

14

In determining whether good cause exists, courts consider: "(1) the explanation for the party's failure to meet the deadline, (2) the importance of what the Court is excluding, (3) the potential prejudice if the Court allows that thing that would be excluded, and (4) the availability of a continuance to cure such prejudice." *Keranos*, 797 F.3d at 1035; *see also S & W Enters*, 315 F.3d at 535. The Court considers those factors in exercising its discretion whether to grant the Motion to Amend.

As to the first factor, TWW argues that it "was diligent in determining which products infringe and in filing this motion." (Dkt. No. 209 at 6.) First, TWW maintains that its original infringement contentions were sufficient under the law "as they identified the accused products by their specific structure—built-in pumps"—and "also included as many model numbers as known." (*Id*; Dkt. No. 245 at 3 ("In this case, infringing products have always been identified by their structure[—]airbeds with an electric built-in pump.").) TWW asserts that it now only seeks to add model numbers. According to TWW, "it performed diligent searching." (*Id*. at 7.) TWW "visit[ed] Walmart stores . . . and review[ed] Walmart's online sales." (*Id*.) After realizing that its list would remain incomplete without discovery, TWW served an interrogatory on Walmart that asked Walmart to identify: "[e]very model (including each version of each model) of each airbed with a built-in-pump that you have sold or offered for sale during the Relevant Time Period." (*Id*.) TWW argues that Walmart's response was inadequate and that, even now, after the close of discovery, Walmart is still supplementing its responses regarding accused products. (*Id*. at 8.)

---

the identification of products. And it's just by model number.").)

TWW also argues that it also "diligently sought lists of products from the Intervenors and third parties." (*Id.* at 8.) However, the Intervenor-Defendants made finalizing a list of infringing products difficult. (*Id*. at 9 (referring to multiple discovery disputes and supplementations by the intervenor defendants).)

In response, Defendants argue that TWW has not shown the requisite for three main reasons: (1) the information relating to the products was publicly available as of TWW's original infringement contentions, as the majority of these products could have been identified had TWW simply searched the Walmart.com website; (2) TWW's interrogatory was served 6 months after its original infringement contentions were served; and (3) TWW failed to timely update its contentions based on the information TWW received from the Defendants during the discovery period. (Dkt. No. 238 at 8–13.)

As to the second factor, TWW argues that the importance of adding the specific names of accused products is "unquestionable." (Dkt. No. 209 at 9.) TWW asserts that it "seeks to include these products specifically by name, model number, UPC and/or similarly identifying information to avoid further disputes regarding whether these products are accused and for clarity purposes to ensure that TWW is entitled to a complete and accurate damages computation at trial." (*Id*. at 10.)

In response, Defendants asserts that "[w]hile it is true that denying TWW's ability to amend its infringement contentions would preclude it from recovering with respect to sales of those products by Walmart, a number of the products TWW seeks to add are not sold by Walmart, and should not be part of the case." (Dkt. No. 238 at 15.)

As to the third factor, TWW argues that the addition of more specific identifying information has no prejudicial effect because TWW has always accused airbeds with built-in

pumps. (Dkt. No. 209 at 10.) "There is no prejudice to Walmart or Intervenors to formally include specific names, model numbers, and/or UPCs." (*Id*.) Further, TWW argues that it is not changing any infringement theories by merely adding more specific identifying information. (*Id*.)

In response, Defendants argue that they would be "significantly prejudiced by the belated inclusion of these additional products in the case." (Dkt. No. 238 at 15.) Here, TWW waited until after fact discovery closed to file its motion to amend, leaving Defendants without the opportunity to seek or provide discovery that may be relevant to these additional products, including discovery potentially relevant to non-infringement positions for these additional products. (*Id*. at 16.)

As to the last factor, TWW argues that, because there is no prejudice, this factor is not relevant. (Dkt. No. 209 at 10.) Defendants respond that "a continuance could partially cure the prejudice to Defendants, but would not completely do so . . . . If TWW is allowed to amend their Infringement Contentions, Defendants should be allowed to provide Amended Invalidity Contentions." (Dkt. No. 238 at 16–17.)

Upon applying the factors listed above to the unique facts and circumstances present here, the Court is persuaded that TWW has demonstrated the good cause necessary for an amendment. The Patent Rules require "that the accused products be identified 'as specific[ally] as possible' and 'by name . . . or number, **if known**.'" *Keranos*, 797 F.3d at 1036 (citing P.R. 3-1(b)) (emphasis added). At the time TWW served its original infringement contentions, TWW did not know the names or model numbers it seeks to add to its infringement contentions. To determine what it did not know, TWW visited Walmart stores, reviewed Walmart's online sales, and served upon Defendants interrogatories asking for such information. This is not, on its face, an unreasonable course of action.

Furthermore, Walmart admits that "TWW appears to have sourced most of the information from four documents Walmart provided TWW on April 12, 2018 . . . [and] [t]he remainder appears to be from two documents provided to TWW on April 25 and April 28." (Dkt. No. 251 at 2.) Walmart also admits that this evidence was sufficient to identify a clear majority of the products TWW seeks to add. (*Id*.) TWW filed the instant Motion approximately six weeks after receiving the first set of documents. (*See* Dkt. No. 209.) Such a delay, on its face, is not unreasonable.

TWW could have been more diligent in seeking this information from Walmart, but this level of diligence is outweighed by the other factors. First, Walmart admits that TWW's proposed amendment is both significant and important, and that if this Court were to deny TWW their requested relief it would preclude TWW from recovering with respect to sales of those products by Walmart. Second, the Defendants will suffer little, if any, prejudice from the amendment, as the products that TWW seeks to add are all air mattresses with built-in pumps, which are and have been the subject of this litigation since the beginning.[11] Defendants cannot and do not credibly claim they lacked notice of this. If Defendants believe additional discovery (as opposed to a continuance) is necessary to cure prejudice, if any exists, additional discovery is still, in the Court's opinion, a viable option, as trial is still three (3) months away.

Ultimately, the factors, on balance, support granting TWW leave to amend its Infringement Contentions. Accordingly, the Court hereby **GRANTS** TWW's Motion for Leave to Grant Infringement Contentions. (Dkt. No. 209.)

---

[11] During the hearing, Walmart, when pressed by the Court to identify any such prejudice, identified: (1) potential prejudice to an entity that has not appeared before the Court in this litigation, and (2) the possibility of a not yet developed, late-breaking inventorship defense centered on this same entity or person. (*See* Dkt. No. 259, Hr'g Tr. at 19:19–29:23.) However, this is not the type of prejudice properly analyzed in this analysis.

### III. CONCLUSION

Accordingly, the Court hereby rules on the above-addressed motions as follows:

| | |
|---|---|
| Walmarts' Motion to Supplement Invalidity Contentions (Dkt. No. 127) | **GRANTED**. |
| Intervenor Defendants' Motion to Amend/Correct the Docket Control Order to Provide for Intervenor Defendants' Service of Invalidity Contentions (Dkt. No. 125) | **GRANTED**. |
| TWW's Motion to Compel (Dkt. No. 204) | **DENIED** for the reasons stated at the hearing. |
| TWW's Motion for Leave to Amend Infringement Contentions (Dkt. No. 209) | **GRANTED**. |

**So Ordered this**
**Jul 23, 2018**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE